STELLMACHER, Appellant, vs. WISCO HARDWARE COMPANY, Respondent.

*May 8—June 15, 1951.*

*J. E. O'Brien* of Fond du Lac, for the appellant.

For the respondent there was a brief by *Toebaas, Hart, Kraege & Jackman* and *D. V. W. Beckwith,* all of Madison, and oral argument by *Mr. Lawrence E. Hart* and *Mr. Beckwith.*

HUGHES, J. Counsel for plaintiff complains because he was not permitted to submit the case upon a general verdict. He urges as error the court's failure to submit "the omnibus question covering all the alleged defects which rendered the place and means of employment unsafe."

The allegations of the complaint were vague and manifold. There was an allegation that the platform was slippery from snow; that the dolly which defendant provided was not equipped with brakes; and that the ground was rutted, causing the platform of plaintiff's truck to be a foot below defendant's loading platform.

The main facts upon which plaintiff sought to predicate liability were these: That plaintiff, as a customer, visited defendant's place of business in the city of Madison to pick up an order consisting of insulating board and hardware. Plaintiff had some lumber on the truck when he arrived at the Wisco plant. When he backed the truck up to the side of the loading platform the rear wheels settled into a rut which dropped the truck platform ten to twelve inches below the loading platform. Plaintiff went into the warehouse and talked with one of the Wisco employees. It was agreed that plaintiff would take one of defendant's dollies (a cart with two wheels, one on either side of the platform, upon which it rides, and a castor wheel upon each end to balance the load), and load up the insulation board, while defendant's employee filled the hardware order. The plasterboard came in packages about eight feet long and two feet wide and weighed about one hundred pounds each.

Plaintiff and an elderly gentleman, who had accompanied him, loaded ten or twelve packages on the dolly and took it out onto the loading platform to the rear of plaintiff's truck. While engaged in transferring them from the dolly to the truck the plaintiff took the end of the uppermost package from the front and pulled it toward the truck; his helper lifted upon the rear end and shoved. While plaintiff was so engaged upon one of the packs the dolly ran forward to the edge of the platform, causing plaintiff to lose his balance and fall on the lumber upon the truck and then off onto the frozen earth. He sustained a fractured hip and other serious injuries.

Plaintiff relied upon industrial commission safety order 15 (b):

"Every elevated walk, runway, or platform shall be substantially constructed and shall be equipped with standard guardrails and toeboards.

"Exception: Guardrails and toeboards will not be required on loading or unloading sides of shipping platforms with the exception of lumberyard shed platforms where handrails only will be required. However, it is recommended that protection be furnished in all cases wherever possible."

Plaintiff's counsel apparently first proceeded upon the theory that the defendant's platform was a lumberyard shed platform and therefore defendant was negligent in not providing a handrail. He also argued that it was negligent not to provide a toeboard or guardrail or both.

The shipping platform involved ran along the back of defendant's warehouse, was about four feet high and without a roof. The trial court was obviously correct in holding that this was an ordinary shipping platform and not a lumberyard shed platform.

It also properly held as a matter of law that the defendant was not negligent when it omitted a guardrail and toeboards from the outside or loading edge of the platform. A guardrail would be in the way of loading operations and a toeboard would in itself constitute a hazard for customers to trip over.

Counsel for plaintiff complains that the court did not submit to the jury the question of whether the platform was unsafe because slippery from accumulated snow or because it was rotted, shaky, and unstable.

Plaintiff testified that there was snow upon the platform, but such testimony was purely incidental. He testified that the lurching of the dolly threw him off balance, causing him to fall.

The testimony of one of defendant's employees was that the dock had been replaced by a concrete platform because some of the pillars were rotting and it was deemed unsafe.

Counsel seized upon this to establish a new issue, although there was no testimony that any unsteadiness of the platform caused the dolly to lurch.

The issues raised during the trial were submitted by the court. The plaintiff did not ask that any additional specifications of negligence be submitted to the jury. We know of no rule of law which permits the plaintiff to allege negligence generally and thereby throw upon the defendant the burden of negating all possible negligence.

In *Matuschka v. Murphy* (1921), 173 Wis. 484, 487, 180 N. W. 821, the court said:

"It is the function of a special verdict to secure a finding by the jury on each question litigated. In negligence cases each ground of negligence constitutes a distinct litigated question, and proper practice requires that the jury be given an opportunity to find specially with reference to each particular ground of alleged negligence. This cannot be accomplished by the submission of an omnibus question in which the jury is required to find generally upon the question of negligence."

"Sec. 101.06, Stats., does not create a cause of action in favor of or against anyone. It lays down a standard of care and if those to whom it applies violate the provisions of the statute, they are guilty of negligence." *Holzworth v. State* (1941), 238 Wis. 63, 68, 298 N. W. 163. See also *Morrison v. Steinfort* (1948), 254 Wis. 89, 91, 35 N. W. (2d) 335.

The record shows that plaintiff requested the specification of no other items of negligence in the special verdict.

As stated in *Nimits v. Motor Transport Co.* (1948), 253 Wis. 362, 364, 34 N. W. (2d) 116:

"Counsel for the parties have a distinct obligation to aid in the preparation of special verdicts and to voice objection to the form of questions, if such questions are objectionable, when it will afford an opportunity to the trial court to correct them. Counsel may not accept the language of the trial court as used in the special verdict without objection, wait and see whether the answers of the jury are satisfactory

and, if not, then for the first time complain about the phraseology upon appeal."

Counsel for the plaintiff contends that the trial court erred in refusing to grant a new trial because of improper argument of one of defense counsel. The affidavit of the plaintiff in support of the motion for a new trial stated such argument to be, in part:

" 'Ladies and gentlemen, you are dealing with not an ordinary lawyer, but Mr. O'Brien is one of Wisconsin's noted criminal lawyers and has kept more criminals out of prison than any other lawyer. He is pretty smooth and there are a lot of scalawags that ought to be behind bars that now are running around free.'

"That this language was repeated, and added thereto was the charge that the said plaintiff's attorney had kept more scalawags out of prison [or jail] than any (or all) the lawyers of the state of Wisconsin; that he is now here in this court demanding heavy and exorbitant damages for the plaintiff against the defendant."

Counsel made no protest at the time. To have done so would have made it possible to have a record of the exact language while it was fresh in the minds of all present in the courtroom and would have afforded an opportunity to the trial court to declare a mistrial if it deemed the breach to be serious enough, or to have reprimanded the offending counsel in the presence of the jury if it considered that would be effective under all of the circumstances. Counsel for the defense says that whatever language was used was uttered in good humor and accepted by plaintiff's counsel in the same vein.

Plaintiff's counsel is able and experienced, and if he felt aggrieved by the argument of opposing counsel he should have taken steps on the spot to protect himself.

In *Basile v. Fath* (1925), 185 Wis. 646, 650, 201 N. W. 247, 202 N. W. 367, the court treated this question fully and then said:

"Such course of objecting to improper remarks so that an immediate ruling by the court and the admonishing of counsel may avoid injurious consequences therefrom has been the procedure in the cases heretofore passing upon such situations. It is only in cases where the trial court improperly refused to sustain such objections, or where counsel, after having been ruled against and admonished by the trial court, has nevertheless persisted in objectionable conduct or methods of argument, that this court has held new trials should have been granted." To the same effect, see *Hacker v. Heiney* (1901), 111 Wis. 313, 320, 87 N. W. 249; *Mayer v. Milwaukee Street R. Co.* (1895), 90 Wis. 522, 526, 63 N. W. 1048; *Laue v. Madison* (1893), 86 Wis. 453, 462, 57 N. W. 93; *Heucke v. Milwaukee City R. Co.* (1887), 69 Wis. 401, 409, 34 N. W. 243.

We cannot conclude from the record that the trial court erred in holding that the argument was not prejudicial to the plaintiff's rights.

*By the Court.*—Judgment affirmed.