### TAYLOR v. UNITED STATES.

#### No. KC–204.

United States District Court
D. Kansas.

Dec. 24, 1952.

Joseph H. McDowell and John P. Carr, both of Kansas City, Kan., for plaintiff.

Robert H. Bingham, Asst. U. S. Atty., Topeka, Kan., for defendant.

MELLOTT, Chief Judge.

Recovery was sought in the amount of $25,778.55 under the Federal Tort Claims Act, Title 28 U.S.C. § 1346(b). At the conclusion of the evidence the court announced that judgment would be entered in favor of the defendant. Following overruling of a motion for a new trial, the court directed counsel for the defendant to prepare findings and conclusions and a direction for the entry of the appropriate judgment. The findings, conclusions and direction submitted follows:

#### Findings of Fact

1. Plaintiff, Minnie Taylor, is 67 years old and resides at 4215 Booth, Kansas City, Kansas.

2. The amount in controversy exceeds in value the sum of $3,000, exclusive of interest and costs.

3. On February 15, 1951, at approximately 1:15 p. m. plaintiff, while entering the United States Post Office, Seventh and Minnesota Avenue, Kansas City, Kansas, through the east or Seventh Street entrance, and while preparing to transact business with said Post Office, slipped and fell in the east vestibule. Plaintiff's testimony further indicates that on her entry into the vestibule she switched the package which she was carrying from her left hand to her right hand, said package being approximately 12″ x 8″ x 4″.

4. As a result of this fall plaintiff suffered a compression fracture of the first lumbar vertebra, which has rendered her approximately eighteen percent partial permanently disabled. Plaintiff's Exhibit 4. Immediately subsequent to plaintiff's fall she was aided by two individuals who placed her on a chair in the lobby from which she was removed by ambulance to a hospital and placed, for a period of eight weeks, in a hyperextension body cast. Plaintiff's hospital bills amounted to $528.-55 and her medical bill amounted to $250. Subsequent to plaintiff's release from the hospital she continued in her former employment for a period of one year, discontinuing said employment on July 1, 1952, for the reason that said injury has made it impossible for her to continue in that occupation.

5. On the date in question it is stipulated, per Exhibit 3 herein, that a light snow occurred some time prior to 3:00 a. m. and that from that time to the time of the accident there were intermittent periods of rain and sleet.

6. Custodial personnel of the Post Office had, at approximately 8:00 a. m., February 15, 1951, removed the snow and ice from the steps leading into the vestibule where plaintiff fell, and had removed the snow from the sidewalks surrounding the Post Office. In addition testimony was adduced to the effect that it was customary to put salt or sand on the steps leading into the vestibule so as to prevent patrons of the Post Office from slipping thereon, and the Court so finds from the evidence that salt or sand was placed on the steps on the day in question.

7. As a further precaution, a custodial employee of the Post Office had several times that day at approximately half-hour intervals, mopped up the water and debris, if any, from the vestibule so as to keep the floor clean. The last time the vestibule was cleaned prior to the accident in question was around 12:00 o'clock noon. The court further finds, as a fact, that there was no ice on the floor of the vestibule at the time of plaintiff's accident. In addition, the radiator inside the vestibule was in working order, which served to heat the vestibule and melt snow which would be tracked in by patrons coming into the Post Office.

8. There was no showing indicating that the floor of the vestibule had been oiled, waxed, polished, or that it was defective in any manner. In addition, there was no showing that it was a common practice or precaution of prudent merchants under similar circumstances to keep a mat or other covering on the floor. A rubber mat was put into the vestibule by a custodial employee after this accident upon orders of an employee in the Postmaster's office.

### Conclusions of Law

1. This action, predicated on 28 United States Code, Section 1346(b), brought by plaintiff, a citizen and resident of the State of Kansas, for an injury occurring within this district, confers jurisdiction in this court.

2. The defendant owed plaintiff the duty to maintain the premises in question in a reasonably safe condition, which means that defendant must have exercised ordinary care, that is the degree of care that an ordinarily cautious and prudent storekeeper would exercise under the same or similar circumstances to protect his customers or invitees from danger.[1]

3. The court concludes, in the absence of any showing that it was a common practice or precaution of prudent merchants under similar circumstances to do other

---

[1]. Reese v. Abeles, 100 Kan. 518, 164 P. 1080, L.R.A.1917E, 747; Thogmartin v. Koppel, 145 Kan. 347, 65 P.2d 571.

than was done in this case, that plaintiff failed to establish actionable negligence on the part of the defendant.

It is, therefore, adjudged and decreed that judgment be entered this date for defendant, with costs of the action taxed to plaintiff herein.

Before signing the above, the action indicated below was taken:

The court overrules plaintiff's objection to the portion of Finding No. 6 under which it is found that salt or sand had been placed on the steps of the post office on the day in question. It sustains plaintiff's objection to the portion of Finding No. 7 that there was no ice on the floor of the vestibule at the time of the accident and finds that small particles of ice, snow and slush were on the floor of the vestibule, having been tracked in by patrons and others entering the post office. The vestibule is inside the lobby of the post office however; and, as stated in the remaining portion of the finding, the radiator inside the vestibule was in working order, which served to heat the vestibule and to melt such ice, snow and slush as was tracked in.