PALUCH, Appellant, vs. BALDWIN PLYWOOD & VENEER COMPANY and another, Respondents.

*September 9—October 8, 1957.*

For the appellant there was a brief by *Sydney R. Mertz,* attorney, and *Lloyd D. Mitchell* of counsel, both of Oshkosh, and oral argument by *Mr. Mertz.*

For the respondents there was a brief by *Jerome Fox* of Chilton, *Lehner, Lehner & Behling,* and *Adolph P. Lehner,* and oral argument by *Howard N. Lehner,* all of Oconto Falls.

BROADFOOT, J.    The complaint alleged that the company violated the safe-place statute (sec. 101.06, Stats.) and general orders on safety promulgated by the industrial commission of Wisconsin.    As to the violation of the safe-place statute the plaintiff alleged that the company was negligent in the following respects:

"(a) Said loading platform was so constructed and maintained by the defendant that it was dangerous and unsafe.

"(b) Defendant failed and neglected to construct said loading platform in a good state of repair and had permitted the metal strip adjacent to the edge of the platform to become slippery and worn thus endangering the life and limb of persons lawfully using said platform.

"(c) Defendant failed to provide a nonslip surface or other effective means to prevent slipping where the nature of such work would reasonably permit.

"(d) Said defendant failed to keep and maintain said elevated platform and surface free from all obstruction or substance over which or on which persons might stumble, slip, or fall.

"(e) That the defendant failed in the duty to keep as safe as the nature of the business would reasonably permit."

In addition the complaint alleged that by reason of the aforesaid the company violated sec. 101.06, Stats., and the general orders on safety promulgated by the industrial commission of Wisconsin, including, but without limitation, General Order No. 17A.

Among the facilities of the company was a building housing its veneer plant.    At the north end of said building there was a concrete loading platform about 10 feet in width and about 24 feet in length.    The platform was covered by a roof

and it was inclosed by brick walls with the exception of two openings seven feet square on the north side thereof. At the south side of the platform there was a door leading into the building. Plaintiff testified that the loading platform was about four feet high. At another time he testified that it was about three feet from the top of the rear bumper on his car to the top of the loading platform. Another witness testified that when trucks backed up to the platform to load or unload, the truck platform was higher than the loading platform. A two-wheeled hand truck or dolly was used to transport materials and supplies from motor trucks to the platform and from the platform to the trucks. A sheet of iron or steel about four feet square was used to bridge the space between the loading dock and the truck platforms when the dolly was being so used. When the metal plate was not in use it was pulled back on the platform and left there in a flat position.

On March 12, 1952, plaintiff was an employee of the company. He had been so employed for about four years. On that date the plaintiff purchased some veneer from the foreman of the shipping department. The veneer was placed on the loading platform and after plaintiff finished his work for the day he proceeded to his automobile which was parked near by and backed it up to the loading platform. He stepped on the rear bumper of his car for the purpose of climbing up on the platform to get his veneer. After standing on the bumper he placed his right knee upon the platform. As he was attempting to bring his left leg up to the platform his right knee slipped and he fell face down on the platform. He first struck his elbows on the platform and his right arm sustained a severe fracture. He testified that his right knee was placed upon the metal plate used in loading and unloading the trucks, and that this metal plate had become smooth and slippery because of the continued use of the metal wheels of the hand trucks upon it. He did not testify as

to what use, if any, he made of his hands while attempting to reach the top of the platform. He testified further that there was no stairway or ladder at the north end of the platform for the purpose of gaining access thereto. Plaintiff did not see the metal plate lying on the platform. As an employee he had been on the platform many times. He had used the metal strip and knew it was left at the north edge of the platform when not in use.

Other witnesses, former employees at the plant, testified to the use of the platform and metal strip. Plaintiff was the only one who testified as to how his accident happened.

At the time of his injury, the plaintiff was not an employee of the defendant but was a frequenter. The law hereinafter stated is the same whether plaintiff was an employee or frequenter.

The plaintiff first contends that the defendant company violated the provisions of the safe-place statutes. In his brief he carefully analyzes, and quotes extensively from, many decisions of this court under those statutes. However, there is no dispute between the parties as to the law. Both agree that under the safe-place statutes an employer is bound to furnish a place of employment as free from danger as the nature and place of the employment will reasonably permit. Plaintiff contends that the trial court did not correctly state the law in his memorandum decision. At one place in the memorandum decision the trial court said "that the use and existence of this sheet metal was as reasonably safe as the operation of the business would permit." It is claimed that this stated the common-law rule rather than the law under the safe-place statutes. The trial court dictated his memorandum decision into the record. It is urged that the proper language should have been "that the use and existence of this sheet metal was as safe as the operation of the business would reasonably permit."

Defendants' motion was made on two grounds: First, that the plaintiff had failed to prove a cause of action, and second, that as a matter of law the plaintiff's negligence was equal to or greater than any possible negligence on the part of the defendant. The motion for a directed verdict was granted on both grounds. After hearing the arguments of the parties, the trial court had already made up his mind to grant the motion. In point of service the trial judge is one of the oldest, if not the oldest, circuit judge in the state. He has presided at the trial of a great number of cases with ability and distinction. He was familiar with the law and was giving the plaintiff the benefit of the law. The fact that he misspoke in dictating the memorandum decision was not prejudicial to the plaintiff because his decision had already been arrived at by proper application thereof.

We agree with the trial court that the plaintiff failed to prove a violation of the safe-place statute unless it should be held that there was a violation of one or more of the industrial commission's general orders on safety. The platform was well constructed. It was substantially inclosed and had a roof, and the record reveals that it was as free from danger as the nature and place of the employment would reasonably permit.

The plaintiff stresses the words "absolute duty" on the part of the employer which have been frequently used in our decisions. From this language he contends that the employer is an insurer and that negligence is not an issue in a safe-place case. The safe-place statutes do not make an employer the insurer of the safety of a frequenter. *Boutin v. Cardinal Theatre Co.* 267 Wis. 199, 64 N. W. (2d) 848. The burden of proving all of the elements of liability under the safe-place statutes is upon the plaintiff in an action seeking recovery of damages for personal injuries. It has long been held that the safe-place statutes lay down a standard of care and if those to whom it applies violate the provisions thereof

they are guilty of negligence. *Holzworth v. State,* 238 Wis. 63, 298 N. W. 163; *Morrison v. Steinfort,* 254 Wis. 89, 35 N. W. (2d) 335; *Stellmacher v. Wisco Hardware Co.* 259 Wis. 310, 48 N. W. (2d) 492. As in other negligence cases, contributory negligence is a defense.

Order No. 17 of the industrial commission's general orders on safety reads as follows:

"(a) Every elevated walk, runway, platform, or other surface on which employees work shall be substantially constructed and so maintained, and so far as the nature of the work will reasonably permit, kept free from obstructions or substances over which or on which persons may stumble, slip, or fall.

"In all other cases where a slipping hazard exists, a nonslip surface or other effective means to prevent slipping, where the nature of the work will reasonably permit, shall be provided.

"Every platform, or other surface on which employees work, more than 24 inches in height shall be equipped with standard guardrails and toeboards unless guarded by location.

"(*Exception.* Guardrails and toeboards will not be required on the loading or unloading sides of shipping platforms with the exception of lumberyard platforms where guardrails only will be required. However, it is recommended that protection be furnished in all cases wherever possible.)

"(b) Every permanent elevated platform shall be provided with one of the following means of access:

"1. A stairway, the steps of which shall have a uniform rise of not more than eight inches, a uniform tread of not less than nine inches and equipped with handrails and maintained in accordance with Order 22.

"2. A fixed vertical ladder, the side rails of which extend at least 42 inches above the platform.

"3. A fixed inclined ladder equipped with handrails on both sides and from 30 inches to 36 inches high measured vertically from the nose of the tread.

"(*Exception.* This order does not include platforms supporting single units of equipment which receive no atten-

tion other than oiling or repairs, nor does it include platforms used exclusively in connection with such equipment as steam traps and sprinkler valves. However, it is recommended that permanent ladders or stairways be used wherever possible.)"

Failure to comply with a general safety order applying to places of employment promulgated by the industrial commission constitutes a violation of the safe-place statutes. *Wannmacher v. Baldauf Corp.* 262 Wis. 523, 55 N. W. (2d) 895, 57 N. W. (2d) 745. Plaintiff urges that there was a violation of Order 17 in that no steps or ladder were furnished for access to the north side of the loading platform. The order only requires one set of steps or ladder, and it is apparent from the record that the approach to the platform was furnished at the south side thereof through the door from the plant. There is no evidence that the approach thereby was not safely constructed and maintained. We can find no violation of the order in that regard. No argument is advanced before us on the lack of guardrails and toeboards. That feature of the order was dealt with in the *Stellmacher Case, supra.*

The plaintiff pleaded and argues before us that the defendant failed to keep and maintain said elevated platform and surface free from all obstruction or substance over which or on which persons might stumble, slip, or fall. The only proof in that regard is that the metal plate was on the north edge of the platform at the opening through which the plaintiff attempted to enter thereon. Although the plaintiff testified that he did not see the plate, there is no evidence that it was dark or that it could not have been seen had plaintiff looked. He was familiar with the use of the strip and that it was often dropped and left in the position in which he found it. The plaintiff testified that the metal plate was made slippery by the iron wheels of the hand truck or dolly running over it. There is no proof that it was slippery when

stepped upon, and it was used constantly in loading and unloading merchandise and supplies. The fact that his knee slipped upon the plate is not proof that it was unsafe for its intended use. It was in a safe position for anyone properly entering upon the platform from the south, and we can find no violation of the safety order in this record.

Since we have determined that the defendant did not violate the safe-place statute, the question of the plaintiff's contributory negligence need not be considered. Were it necessary, we would have no hesitation in concluding upon the record before us that the plaintiff's negligence was equal to or greater than any negligence on the part of the defendant. His selection of the place to enter upon the platform after a safe means was provided, his failure to see the plate which was in plain sight and of a size that would be clearly visible, and placing his knee on an object which he himself felt to be slippery, would all be acts of negligence on his part. The trial court properly disposed of the case by directing a verdict.

*By the Court.*—Order and judgment affirmed.