The AMERICAN EXCHANGE BANK OF MADISON, WISCONSIN, As Executor of the Estate of Pauline H. Williams, deceased, Plaintiff-Appellant,

v.

UNITED STATES of America, Defendant-Appellee.

No. 12011.

United States Court of Appeals Seventh Circuit.

July 16, 1958.

Robert L. Curry, Madison, Wis., Roberts, Roe, Boardman, Suhr & Bjork, Madison, Wis., for appellant.

George Cochran Doub, Asst. Atty. Gen., Civil Division, Alan S. Rosenthal, Paul A. Sweeney, Attorneys, Department of Justice, Washington, D. C., George E. Rapp, U. S. Atty., Madison, Wis., for appellee.

Before DUFFY, Chief Judge, and HASTINGS and PARKINSON, Circuit Judges.

DUFFY, Chief Judge.

This action was brought by Pauline H. Williams under the Federal Tort Claims Act to recover damages for personal injuries sustained when she fell on steps leading to an entrance of the post office building in the city of Madison, Wisconsin. Since this appeal was taken, Mrs. Williams passed away and The American Exchange Bank of Madison, Wisconsin, as Executor of the Estate of Pauline H. Williams, deceased, has been substituted as party plaintiff.

On September 3, 1952, the day when Mrs. Williams fell, the steps of the post office were dry. They were constructed from granite and were free from any wear or defect. They were about twenty-six feet in width. It was and is plaintiff's theory that the Wisconsin Safe Place Statute was applicable, and provided a specified standard of care, the violation of which, constituted negligence. Plaintiff insists that any private person or concern owning a building used by the public, or providing a place of employment, in the State of Wisconsin, would have been required to erect railings or handrails on the steps leading to the post office entrance.

The District Court held that neither the Safe Place Statute nor the rules and orders of the Wisconsin Industrial Commission are applicable to the post office building owned and operated by the United States Government, and that the United States was not negligent at the time Mrs. Williams was injured. Judgment was entered dismissing the action.

On September 3, 1952, at 11 a. m., Mrs. Williams, then seventy years of age, approached the Monona Avenue (main) entrance of the post office building at Madison, Wisconsin, intending to mail two letters in the building. She ascended the first flight of three steps, crossed the stone platform or landing, and started to ascend the flight of five steps leading to the stone platform in front of the doorway or entrance. Upon reaching the top step which was a part of the second platform or landing, she fell backward to the platform between the two flights of steps, and suffered personal injuries.

The pertinent provisions of the Federal Tort Claims Act are: Title 28 U.S.C. § 2674—"The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, * * *" Title 28 U.S.C. § 1346(b) provides in part: "* * * the District Court, * * * shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, * * * for * * personal injury * * * caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office

or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

In finding the issues favorable to the defendant, the trial court relied in large part upon §§ 1.02 and 1.03(3) of the Wisconsin Statutes. In § 1.02 the Wisconsin legislature consented " * * * to the acquisitions heretofore effected and hereafter to be effected by the United States, by gift, purchase or condemnation proceedings, of the title to places or tracts of land within the state; and, subject to said conditions, the state hereby grants, cedes and confirms to the United States exclusive jurisdiction over all such places and tracts. * * * "

Section 1.03(3) provides for the state to retain concurrent jurisdiction over the federally owned property so that process issued under the authority of the state may be served on or in any such property.

The trial court held that by reason of the provisions of §§ 1.02 and 1.03(3), the Wisconsin Safe Place Statute and the Rules and Orders of the Wisconsin Industrial Commission are inapplicable to the post office premises and the United States could not be found negligent for failing to comply therewith.

It may be conceded that the State of Wisconsin could not penalize the federal government for violations of the Wisconsin Safe Place Statute or of safety orders. We think, however, that fact is immaterial. The Safe Place Statute sets up a standard of care which replaces the common law for persons in Wisconsin insofar as public buildings and places of employment are concerned. But in this case, the State of Wisconsin is not attempting to subject the federal government to the Safe Place Statute. It is the federal government, through the Tort Claims Act, that has consented to liability the same as is imposed upon a private person in Wisconsin. Section 2674 says: "The United States shall be liable * * * in the same manner and to the same extent as a private in-

dividual under like circumstances * * *." Section 1346(b) provides the District Court has jurisdiction of civil actions against the United States for damages caused by negligent and wrongful acts of an employee of the government while acting within the scope of his office or employment "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

■ It seems clear to us that Congress has said in unambiguous language that the United States is to be treated exactly as a private individual and not as a sovereign entity in determining its liability. In Indian Towing Co., Inc., v. United States, 350 U.S. 61, 68–69, 76 S. Ct. 122, 126, 100 L.Ed. 48, the Supreme Court said, in referring to the Federal Tort Claims Act: "The broad and just purpose which the statute was designed to effect was to compensate the victims of negligence in the conduct of governmental activities in circumstances like unto those in which a private person would be liable and not to leave just treatment to the caprice and legislative burden of individual private laws."

■ As a second ground for holding the United States not liable, the trial court cited Title 28 U.S.C. § 2680(a) which provides: "The provisions of this chapter and section 1346(a) of this title shall not apply to—(a) Any claim based upon an act or omission of an employee of the Government, * * * or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."

The trial court reasoned that the function of deciding whether a handrail should be installed on a post office building was one for the General Services Administration, which agency was charged with the duty of maintenance of the premises, and the Court concluded that

this was a discretionary function. In its brief in this Court, the United States does not discuss the point except to say this independent ground for dismissing the action was correct, but, because not necessary to the result, it would not treat § 2680(a) in its brief.

After Dalehite v. United States, 1953, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427, it appeared the discretionary function defense in § 2680(a) might be available in a great variety of cases. Dalehite was the Texas city disaster case and was a four to three decision. Then came Indian Towing Co., Inc., v. United States, 1955, 350 U.S. 61, 76 S.Ct. 122, 127, 100 L.Ed. 48. One of the dissenting Justices in Dalehite wrote the Indian Towing five to four opinion. The Court said: "The differences between this case and Dalehite need not be labored. The governing factors in Dalehite sufficiently emerge from the opinion in that case." This statement seems more ominous than enlightening.

The following year Rayonier, Incorporated, v. United States, 1956, 352 U.S. 315, 77 S.Ct. 374, 377, 1 L.Ed.2d 354, was decided. This opinion (seven to two) was written by another of the Justices who dissented in Dalehite. As to any distinction between the Government's negligence when it acts in a "proprietary" capacity or its negligence when it acts in a "uniquely governmental" capacity, the court said: "To the extent that there was anything to the contrary in the Dalehite case it was necessarily rejected by Indian Towing."

In Dalehite, 346 U.S. at pages 27–28, 73 S.Ct. at page 964, the Court said: "The legislative history indicates that while Congress desired to waive the Government's immunity from actions for injuries to person and property occasioned by the tortious conduct of its agents acting within their scope of business, it was not contemplated that the Government should be subject to liability arising from acts of a governmental nature or function. Section 2680(a) draws this distinction." However, the distinction between governmental and proprietary functions under the Federal Tort Claims Act is badly shattered if not destroyed by the Indian Towing case. That opinion refers to the " 'non-governmental'- 'governmental' quagmire that has long plagued the law of municipal corporations."

There may still remain some immunity from liability under § 2680(a) at the planning rather than at the operational level. In Indian Towing Co., Inc., 350 U.S. at page 69, 76 S.Ct. at page 126 the Court said: "The Coast Guard need not undertake the lighthouse service. But once it exercised its discretion to operate a light on Chandeleur Island and engendered reliance on the guidance afforded by the light, it was obligated to use due care to make certain that the light was kept in good working order; and, if the light did become extinguished, then the Coast Guard was further obligated to use due care to discover this fact and to repair the light or give warning that it was not functioning. If the Coast Guard failed in its duty and damage was thereby caused to petitioners, the United States is liable under the Tort Claims Act."

Undoubtedly there was an exercise of discretion in deciding whether and where a post office building should be located in Madison, Wisconsin, but whether a handrail should be installed as a safety measure on wide stone steps involves action at the operational level and would seem to involve no more discretion than fixing a sidewalk on post office grounds that might be in need of repair.

In the light of the pronouncements of the Supreme Court, and considering the trend of the courts to construe broadly the waiver of immunity provisions of the Tort Claims Act, we hold that the trial court was in error in holding that whether handrails should be installed was a discretionary function.

The courts have held the United States liable in a number of cases involving injuries sustained at or in post office buildings. United States v. Hull, 1 Cir., 195 F.2d 64; Jackson v. United States, 3 Cir., 196 F.2d 725; Rutherford v. United

States, D.C., 93 F.Supp. 772; Blaine v. United States, D.C., 102 F.Supp. 161; Washington v. United States, D.C., 141 F.Supp. 793; Taylor v. United States, D.C., 108 F.Supp. 751. In the Jackson case, the plaintiff was injured while descending post office steps.

Our remaining consideration involves Section 101.06, Wis.Stats., commonly known as the Safe Place Statute. This statute provides:

"Every employer shall furnish employment which shall be safe for the employes therein and shall furnish a place of employment which shall be safe for employes therein and for frequenters thereof and shall furnish and use safety devices and safeguards, and shall adopt and use methods and processes reasonably adequate to render such employment and places of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employes and frequenters. Every employer and every owner of a place of employment or a public building now or hereafter constructed shall so construct, repair or maintain such place of employment or public building, and every architect shall so prepare the plans for the construction of such place of employment or public building, as to render the same safe."

The duty imposed by the Wisconsin Safe Place Statute upon the owner or employer is greater than that required by the common law. Saxhaug v. Forsyth Leather Co., 252 Wis. 376, 31 N.W.2d 589. Section 101.06, Wis.Stats. does not create a cause of action in favor of or against anyone. It lays down a standard of care and if those to whom it applies violate the provisions of the statute, they are guilty of negligence. Wright v. St. Mary's Hospital of Franciscan Sisters, 265 Wis. 502, 505, 61 N.W.2d 900, 902. Failure to comply with a general safety order applying to places of employment promulgated by the Industrial Commission constitutes a violation of the Safe Place Statute. Paluch v. Baldwin Plywood & Veneer Co., 1 Wis.2d 427, 85 N.W.2d 373. Under the Safe Place Statute, a place must not only be reasonably safe as required by common law, but it must be as free from danger as the nature of the place will reasonably permit. Tomlin v. Chicago, Milwaukee, St. Paul & Pacific Railway Co., 220 Wis. 325, 329, 265 N.W. 72, 74. However, the Safe Place Statute does not make an employer the insurer of the safety of an employee or of a frequenter. Paluch v. Baldwin Plywood & Veneer Co., 1 Wis.2d 427, 85 N.W.2d 373.

Several statutory definitions contained in the Wisconsin Safe Place Statute should be noted. In § 101.01(5), the term "frequenter" is defined as:

"The term 'frequenter' shall mean and include every person, other than an employe, who may go in or be in a place of employment or public building under circumstances which render him other than a trespasser."

Section 101.06 provides:

"Every employer and every owner of a place of employment or a public building now or hereafter constructed shall so construct, repair or maintain such place of employment or public building, and every architect shall so prepare the plans for the construction of such place of employment or public building, as to render the same safe."

The definitions contained in Section 101.01(11) are:

"The term 'safe' or 'safety' as applied to an employment or place of employment or a public building, shall mean such freedom from danger to the life, health, safety or welfare of employes or frequenters, or the public, or tenants, or firemen, and such reasonable means of notification, egress and escape in case of fire, and such freedom from danger to adjacent buildings or other property, as the nature of the em-

ployment, place of employment, or public building, will reasonably permit."

At the time Mrs. Williams was injured, § 101.01(12) defined "public building" as:

"The term 'public building' as used in sections 101.01 to 101.29 shall mean and include any structure used in whole or in part as a place of resort, assemblage, lodging, trade, traffic, occupancy, or use by the public, or by three or more tenants."

Five years later, the wording of this section was changed by an amendment published July 17, 1957, reading:

"The term 'public building' * * means and includes any structure, including exterior parts of such building such as * * * exterior platform or steps providing means of ingress and egress * *."

In this amendment, there is mentioned for the first time "exterior platform or steps." As this amendment became effective after Mrs. Williams was injured, it is not controlling here, except for the argument that a reasonable inference can be made that prior thereto, the term "public building" did not include exterior steps.

The United States argues that the Safe Place Statute does not extend to exterior stairways or steps such as here involved. It cites the wording of the statute: "Every employer shall furnish employment which shall be safe for the employes *therein,* and shall furnish a place of employment which shall be safe for employes *therein* and for frequenters *thereof.*"

Clearly, the status of Mrs. Williams under the statute was that of a frequenter. The United States claims there is significance in the following statutory definition: "The term 'frequenter' shall mean and include every person other than an employe, who may go *in* or be *in* a place of employment or public building under circumstances which render him other than a trespasser."

The principal emphasis of the brief upon behalf of the United States is that the Safe Place Statute is limited in scope to areas within the building lines. Defendant insists a clear legislative intent is shown to restrict the Safe Place Statute, and the special responsibilities imposed by it, to the area within the building lines of the particular structure. Certain language in the opinions of the Wisconsin Supreme Court in cases such as Delaney v. Supreme Investment Company, 251 Wis. 374, 29 N.W.2d 754; Perry v. Labor Temple Association, 264 Wis. 36, 58 N.W.2d 293, and Moore v. City of Milwaukee, 267 Wis. 166, 65 N.W.2d 3, seem to give some basis for the Government's argument. For instance, in Perry, the court said, 264 Wis. at page 39, 58 N.W.2d at page 295: "That [the safe-place statute does not apply to the exterior of public buildings] may be true, but it is not the question at issue in this case. The recessed entranceway was within the building lines and was a part of the building." Again, in Moore v. City of Milwaukee, 267 Wis. 166, 171, 65 N.W.2d 3, 6: "We find no authority in the statutes or in the precedents for requiring or permitting us to hold that a step or steps, immediately adjacent to but outside the building, is a part of a building."

A principal cause of the confusion is that in each such case the Court was referring to a public building. However, the Safe Place Statute refers to two situations, one a "public building" and the other, a "place of employment." The following statement from Prehn v. C. Niss & Sons, Inc., 233 Wis. 155, 157, 288 N.W. 736, 737, is enlightening: "The question revolves about the measure of duty owed a business invitee when the host is both employer in and owner of a building. In previous cases * * * this court has stated without deciding the question whether one who is owner of a building and also is maintaining it as a place of employment is liable only for structural defects as owner or sustains the larger liability of an employer. The case at bar squarely presents this ques-

**944**

tion and, having given it full consideration, we hold that a person in the situation above outlined sustains not merely the liability of an owner under the safe place statute but also the larger liability of one conducting a place of employment. Hence, if there is a failure to comply with the requirements of the safe place statute, the mere fact that the injury is caused by a defect other than a structural defect would not of itself be sufficient to excuse from liability one who is both employer and owner."

In a later case, Bobrowski v. Henne, 270 Wis. 173, 178, 70 N.W.2d 666, 670, the court said: " * * * there is no requirement under the Safe Place Statute that a defect in the place of employment as distinguished from a public building, has to occur in a structure or building in order to be actionable."

 There can be no question but that the post office in Madison was a place of employment. The Safe Place Statute provides: "The phrase 'place of employment' means and includes every place, whether indoors or out or underground and the premises appurtenant thereto where either temporarily or permanently any industry, trade or business is carried on, or where any process or operation, directly or indirectly related to any industry, trade or business, is carried on, and where any person is, directly or indirectly, employed by another for direct or indirect gain or profit, * * *" St. § 101.01(1).

The Madison post office provided all the usual services of a post office. Over 1100 post office boxes were located therein and at least seventy-five persons were employed on the premises. Certainly, a trade or business was being carried on. In addition, the building provided rooms for the Department of Justice, and for the United States District Court and offices pertaining to the operation of that Court.

One of the general orders issued by the Industrial Commission of Wisconsin was Order 5116: "All stairways and steps of more than three risers shall have at least one handrail. Stairways and steps five feet or more in width or open on both sides shall have a handrail on each side."

 It is the law of Wisconsin, as hereinbefore indicated, that failure to comply with a general safety order which applies to places of employment, is a violation of the Safe Place Statute. The steps adjacent to the post office building are a part of the "place of employment." The record shows Mrs. Williams customarily and normally used a handrail if available, when mounting steps. It is a reasonable inference that Mrs. Williams would not have fallen when her foot slipped if she, at that time, had a grasp upon a handrail such as was installed after her accident.

Judgment reversed, and cause remanded to the District Court for further proceedings not inconsistent with this opinion.