Nancy MEGAL, Plaintiff-Appellant-Petitioner,

v.

GREEN BAY AREA VISITOR & CONVENTION BUREAU,
INC., Valley Forge Insurance Company, and
Tommy G. Thompson, Secretary of the United
States Department of Health and Human Ser-
vices, Defendants-Respondents.

Supreme Court

*No. 02–2932. Oral argument April 1, 2004.—Decided
July 2, 2004.*

2004 WI 98

(Also reported in 682 N.W.2d 857.)

SYKES, J., took no part.

For the plaintiff-appellant-petitioner there were briefs by *Jolene D. Schneider, John C. Peterson* and *Peterson, Berk & Cross, S.C.,* Appleton, and oral argument by *Jolene D. Schneider.*

For the defendant-respondent Green Bay Area Visitor & Convention Bureau, Inc., there was a brief by *William J. Ewald* and *Denissen, Kranzush, Mahoney & Ewald, S.C.,* Green Bay, and oral argument by *William J. Ewald.*

¶ 1. PATIENCE D. ROGGENSACK, J. Nancy Megal requests that we review a published court of appeals decision that affirmed the order of the circuit court for Brown County, William M. Atkinson, presiding, granting the defendant's motion for summary judgment, thereby dismissing Megal's safe-place violation and negligence claims.

¶ 2. Because we conclude that Megal's safe-place claim was properly dismissed, we affirm that part of the court of appeals decision. However, because we also conclude that the court of appeals erred when it af-

firmed the dismissal of Megal's negligence claim, we reverse that part of the court of appeals decision and remand for further proceedings.

## I. BACKGROUND

¶ 3. The background facts are undisputed. On February 6, 1998, Nancy Megal accompanied her seven-year-old granddaughter, her granddaughter's friend and the two girls' mothers to an ice show at the Brown County Veterans Memorial Arena (Arena). The Arena has three floors totaling nearly 61,000 square feet and, for an ice show, seats a maximum of 5,248 patrons. The night Megal was there for the "Pocahontas on Ice" show, the Arena had sold 4,220 seats, and many of the patrons were children. Megal and her group were seated on the upper level of the Arena. At the end of the show, Megal, along with the rest of the audience seated near her, descended a stairway to exit. The stairway was crowded, and Megal said she held onto the stairway handrail; however, she could not see the stair in front of her. As she neared the bottom step, Megal slipped and fell when she stepped on a ketchup-covered french fry. Megal did not see the french fry before she slipped on it; she did not know how it got there or how long it had been there. As a result of the fall, Megal fractured her left ankle and suffered permanent injury. Aside from the french fry on the stair, there were no other spilled food items on the stairs, nor any other noticeable litter, trash or other debris cluttering the Arena.

¶ 4. Patrons attending events at the Arena are not allowed to bring in food or drink from the outside; however, concessions are available for purchase inside the Arena, but only on the lower east concourse beginning an hour before a show and ending approximately fifteen to thirty minutes before the conclusion of a

show. Patrons may carry these concessions to all areas of the Arena without restriction.

¶ 5. At evening ice shows, including the one Megal attended, two workers are responsible for performing janitorial services. They are not required to abide by formal written procedures. Instead, one of the janitors generally would clean the lower east concourse food area after intermissions, and either janitor would clean up a spill or mess if he or she saw one or was told about one. Usually, the janitors relied on others to tell them of spills.

¶ 6. The Arena is owned by Brown County and leased to the Green Bay Area Visitors & Convention Bureau, Inc. (Bureau). The Bureau had an agreement with Promotion Management, Inc. (PMI) whereby PMI would provide concessions in the Arena, and the personnel necessary for the day-to-day operation of the Arena.

¶ 7. Megal filed a complaint on February 5, 2001, and, once the identity of all parties became known, she filed an amended complaint on April 26, 2001, naming, among others, the Bureau and its insurer, Valley Forge Insurance Company; PMI and its insurer, Valley Forge Insurance Company; and Brown County and its insurer, Wisconsin Municipal Mutual Insurance Company, alleging negligence and a violation of Wisconsin's safe-place statute. *See* Wis. Stat. § 101.11 (2001–02).[1] The circuit court granted partial summary judgment for the Bureau, releasing it from liability for the statutory safe-place claim, but not from the negligence claim. Both the Bureau and Megal moved for reconsideration and the circuit court granted the Bureau's motion, thereby

---

[1] All subsequent references to the Wisconsin Statutes are to the 2001–02 version unless otherwise indicated.

dismissing the negligence claim as well. Megal appealed. The court of appeals affirmed and we accepted Megal's petition for review.

## II. DISCUSSION

A. Standard of Review

¶ 8. We review summary judgments de novo, using the same method as the circuit court. *Alvarado v. Sersch,* 2003 WI 55, ¶ 10, 262 Wis. 2d 74, 662 N.W.2d 350. Summary judgment can be granted only if there are no disputes of material fact and one party's claim is entitled to judgment, as a matter of law. *Id.*

B. Safe-Place Violation Claim

1. Safe-Place law

¶ 9. According to Wis. Stat. § 101.11, every employer and owner of a public building is to provide a place that is safe for employees and for frequenters of that place, and "[e]very employer and every owner of a place of employment or a public building . . . shall so construct, repair or maintain such place of employment or public building as to render the same safe." Section 101.11(1). This duty has a higher standard of care than that imposed by common-law negligence. *Dykstra v. Arthur G. McKee & Co.,* 92 Wis. 2d 17, 26, 284 N.W.2d 692 (Ct. App. 1979), *aff'd,* 100 Wis. 2d 120, 301 N.W.2d 201 (1981). However, the safe-place statute addresses unsafe conditions, not negligent acts. *Gross v. Denow,* 61 Wis. 2d 40, 47, 212 N.W.2d 2 (1973). In addition, the law does not require an employer or an owner of a public building to be insurers of frequenters of the

170

premises. *Strack v. Great Atl. & Pac. Tea Co.*, 35 Wis. 2d 51, 54, 150 N.W.2d 361 (1967).

¶ 10. Moreover, "safe" is a relative term. *Gross,* 61 Wis. 2d at 46. "Safe" does not mean completely free of any hazards. *See id.* What constitutes a safe place "depends on the facts and conditions present, and the use to which the place 'was likely to be put.' " *Id.* at 47 (quoting *Gould v. Allstar Ins. Co.*, 59 Wis. 2d 355, 362, 208 N.W.2d 388 (1973)). Just because a place could be made more safe, it does not necessarily follow that an employer or owner has breached the duty of care established by Wis. Stat. § 101.11(1). *See Fitzgerald v. Badger State Mut. Cas. Co.*, 67 Wis. 2d 321, 327, 227 N.W.2d 444 (1975). Rather, the duty set forth by the statute requires an employer or owner to make the place "as safe as the nature of the premises reasonably permits." *Strack,* 35 Wis. 2d at 54. The "nature of the business" and the "manner in which [business] is conducted" are factors to be considered in assessing whether the premises are safe, within the meaning of § 101.11(1). *See Gerdmann v. United States Fire Ins. Co.*, 119 Wis. 2d 367, 372, 350 N.W.2d 730 (Ct. App. 1984).

¶ 11. In order for an employer or owner to be subject to the standard of care established by Wis. Stat. § 101.11(1) for any unsafe condition of the premises, the employer or owner must have notice that an unsafe condition exists. This notice can be actual notice or constructive notice. *Strack,* 35 Wis. 2d at 54–55; *Kaufman v. State Street Ltd. P'ship,* 187 Wis. 2d 54, 59, 522 N.W.2d 249 (Ct. App. 1994). Constructive notice has been explained as:

neither notice nor knowledge but a shorthand expression, 'the mere trademark of a fiction.' In order to promote sound policy, we attribute constructive notice of a fact to a person and treat his legal rights and interests as if he had actual notice or knowledge although in fact he did not.

*Strack,* 35 Wis. 2d at 54–55 (citations omitted). *See May v. Skelley Oil Co.,* 83 Wis. 2d 30, 36, 264 N.W.2d 574 (1978).

¶ 12. In the context of an alleged safe-place violation, the general rule is that an employer or owner is deemed to have constructive notice of a defect or unsafe condition when that defect or condition has existed a long enough time for a reasonably vigilant owner to discover and repair it. *May,* 83 Wis. 2d at 36; *Strack,* 35 Wis. 2d at 55; *Kaufman,* 187 Wis. 2d at 59. Ordinarily, constructive notice requires evidence as to the length of time that the condition existed. *Kaufman,* 187 Wis. 2d at 59.

¶ 13. The length of time required for the existence of a defect or unsafe condition that is sufficient to constitute constructive notice depends on the surrounding facts and circumstances, including the nature of the business and the nature of the defect. *May,* 83 Wis. 2d at 37; *Gerdmann,* 119 Wis. 2d at 371; *Dykstra,* 92 Wis. 2d at 26. We have carved out a limited exception to the general rule that temporal evidence is required before constructive notice can arise. We have explained:

> [W]hen an unsafe condition, although temporary or transitory, arises out of the course of conduct of the owner or operator of a premises or may reasonably be expected from his method of operation, a much shorter

period of time, and possibly no appreciable period of time under some circumstances, need exist to constitute constructive notice.

*Strack,* 35 Wis. 2d at 55. *See Steinhorst v. H.C. Prange Co.,* 48 Wis. 2d 679, 683–84, 180 N.W.2d 525 (1970).

¶ 14. In *Strack,* the plaintiff was shopping in defendant's grocery store in the produce area where there were tables displaying fruit for sale in the center of a wide aisle. The plaintiff slipped on a small Italian prune that was on the floor and injured her back and leg. *Strack,* 35 Wis. 2d at 53–54. The plaintiff sued the store alleging a violation of the safe-place statute. Though the plaintiff had no evidence that the prune had been on the floor for any appreciable amount of time, as would be required under the general rule for constructive notice, we determined that the grocery store had constructive notice because of its method of merchandizing articles for sale to the public in the area of store where the injury occurred. *Id.* at 55–56. We said:

> [W]e think supermarkets which display their produce and fruit in such a way that they may be handled by customers and dropped or knocked to the floor unintentionally is a way of doing business which requires the storekeeper to use reasonable measures to discover and remove such debris from the floor. ... While the use of self-service produce displays is not negligence as a matter of law, [such displays] do create marketing problems of safety and place upon the store operator the need for greater vigilance if he is to meet the higher than common-law standard of care required by the safe-place statute.

*Id.* at 56–57.

173

¶ 15. Similarly, in *Steinhorst,* the store's method of merchandizing articles for sale to the public in the area of the store where the injury occurred gave rise to constructive notice without evidence that the unsafe condition had existed for any amount of time. *Steinhorst,* 48 Wis. 2d at 684. There, the plaintiff was shopping in defendant's store and was walking next to the men's cosmetic counter when she slipped on spilled shaving foam and injured her wrist and her leg. The cosmetic counter displayed a number of aerosol shaving foams, including "tester" bottles that customers were encouraged to sample. *Id.* at 681. The plaintiff presented no evidence as to how long the shaving foam was on the floor before she slipped on it. We determined that the exception announced in *Strack* applied in *Steinhorst* as well. That is, "[t]he unsafe condition here was substantially caused by the method used to display merchandise for sale. . . . [W]hether the shaving soap got on the floor accidentally or through negligence of a shopper, or intentionally by 'boys playing around,' such conduct should have been foreseen" by the defendant store. *Id.* at 684. Accordingly, while constructive notice of an unsafe condition usually requires temporal evidence relating to the condition, temporal evidence may be unnecessary when the method of merchandizing articles for sale to the public in the area in which the injury occurred makes the harm that occurred at that location reasonably foreseeable.

2. Safe-Place law and Megal's claim

¶ 16. It has not been disputed that the Arena is a public building and that the Bureau is an owner or employer within the meaning of Wis. Stat. § 101.11(1). However, the Bureau urges us to affirm the court of

174

appeals because Megal has not presented any evidence that the french fry upon which she slipped was on the step for any appreciable time. Therefore, the Bureau contends that it cannot be deemed to have constructive notice unless the narrow *Strack* exception applies, and the Bureau asserts that nothing in the record supports it.

¶ 17. On the other hand, Megal argues that the *Strack* exception applies to her because the Bureau could reasonably expect unsafe conditions to arise due to the Bureau's method of selling the Arena's concessions to the public. She claims that two janitors working in a 61,000 square-foot facility throughout which patrons can carry food and drink without restriction, having no specific procedures for patrolling the Arena looking for spills, is similar to the self-serve produce section in *Strack* or the cosmetic counter in *Steinhorst*. However, she also acknowledged that it was just as possible that someone ahead of her in the departing crowd dropped the french fry moments before she stepped on it, as it was that someone dropped the french fry after intermission. Additionally, Megal provided no affidavit from an expert witness or other materials from which we could conclude that a question of fact had arisen about whether the Arena was not as safe as the nature of a 61,000 square-foot entertainment enterprise reasonably permits.

¶ 18. As we explained *supra,* if constructive notice is relied on, generally, evidence of the length of time that the unsafe condition existed is required to establish it. *May,* 83 Wis. 2d at 36. We have imputed constructive notice, without a showing of temporal evidence of the unsafe condition, in a narrow class of cases where the method of merchandizing articles for sale to the public in the area where the harm occurred

should have made that harm reasonably foreseeable at that location. *See, e.g., Steinhorst,* 48 Wis. 2d at 683–84; *Strack,* 35 Wis. 2d at 55. It is important that the harm that occurred be foreseeable in the area where it occurred because Wis. Stat. § 101.11(1) creates a standard of care that requires the employer or owner to make the premises "as safe as its nature would reasonably permit," by correcting the unsafe condition. *Kaufman,* 187 Wis. 2d at 64 (citing *Strack,* 35 Wis. 2d at 55–56). If this obligation is to arise without actual notice or evidence that the unsafe condition was permitted to exist for an unreasonable period of time, the harm that occurred must be reasonably foreseeable in the area where it occurred. *See Kaufman,* 187 Wis. 2d at 65. Otherwise, it would not be reasonable to require the employer or owner to incur liability for not correcting it. *See id.* We have refused to impute constructive notice where the area where the harm occurred is not an area where the owner was merchandizing articles for sale to the public in a way that made the harm that occurred reasonably foreseeable. *See Kaufman,* 187 Wis. 2d at 65 (concluding that the *Strack* exception was not available to a plaintiff who slipped on a banana peel in a store's parking lot).

¶ 19. Furthermore, in some business operations, what constitutes "as safe as the nature of the premises reasonably permits" is outside the realm of typical experience, and requires expert testimony to describe the practices that are reasonably required of the business enterprise at issue. *See Kujawski v. Arbor View Health Care Ctr.,* 139 Wis. 2d 455, 463, 407 N.W.2d 249 (1987) (explaining that expert testimony is necessary when the trier of fact is to determine matters requiring knowledge or experience on subjects that are not within the common knowledge of mankind).

¶ 20. Megal provided neither evidence of the length of time the french fry was on the stair, nor any expert testimony about the usual management and maintenance of a 61,000 square-foot public building where events are held and food is sold for the benefit of the patrons who attend an event. What is reasonable to expect for the management of such a facility in regard to preventing the kind of accident that occurred here is not within the common knowledge of mankind or of this court. Because we have been presented with no testimony that the Arena is not as safe as the nature of the enterprise permits, and because Wis. Stat. § 101.11(1) does not make the Bureau the insurer of all who attend events at the Arena, we have no basis on which to analyze the *Strack* exception for Megal's injury. We cannot speculate about what is reasonable for such an enterprise. *See also Moulas v. PBC Prods., Inc.,* 213 Wis. 2d 406, 417, 570 N.W.2d 739 (Ct. App. 1997) (noting in a safe-place claim that "[p]ersonal opinions of an affiant in the absence of a validating basis do not constitute evidentiary facts"). Accordingly, because the facts of record are insufficient to create a question of fact in regard to constructive notice, we affirm the court of appeals decision dismissing Megal's safe-place claim.[2]

---

[2] Whether an employer or owner has notice of an unsafe condition generally is a question of fact left to the jury. *Gerdmann v. United States Fire Ins. Co.,* 119 Wis. 2d 367, 370, 350 N.W.2d 730 (Ct. App. 1984). Here, however, the facts are not in dispute, and the question is simply whether those facts have any legal significance (i.e., whether the facts Megal provided can be used to impute constructive notice to the Bureau under *Strack v. Great Atl. & Pac. Tea Co.,* 35 Wis. 2d 51, 54, 150

## C. Negligence Claim

¶ 21. Aside from the safe-place violation, Megal's complaint also alleged common-law negligence. The court of appeals affirmed the circuit court's dismissal of that cause of action, stating that a common-law negligence claim could not be maintained if a safe-place violation is alleged and cannot be established. *See Balas v. St. Sebastian's Congregation,* 66 Wis. 2d 421, 426–27, 225 N.W.2d 428 (1975). We disagree, and reverse that part of the court of appeals decision.

¶ 22. Our discussion of the availability of a common-law negligence claim in this kind of situation requires some reference back to the safe-place statute. However, to begin, in Wisconsin, everyone has a duty to everyone else to act with reasonable care. *Alvarado,* 262 Wis. 2d 74, ¶ 16 n.2; *Gritzner v. Michael R.,* 2000 WI 68, ¶ 20, 235 Wis. 2d 781, 611 N.W.2d 906. What constitutes "reasonable care" in a given situation may be defined by case law or by statute. *See Rosholt v. Worden-Allen Co.,* 155 Wis. 168, 172–73, 144 N.W. 650 (1913). We long have held that the safe-place statute establishes a standard of care: to make the place as safe as the nature of the premises reasonably permits. *Strack,* 35 Wis. 2d at 54; *Krause v. Veterans of Foreign Wars Post No. 6498,* 9 Wis. 2d 547, 552, 101 N.W.2d 645 (1960); *Paluch v. Baldwin Plywood & Veneer Co.,* 1 Wis. 2d 427, 432, 85 N.W.2d 373 (1957); *Stellmacher v. Wisco Hardware Co.,* 259 Wis. 310, 314, 48 N.W.2d 492 (1951); *Morrison v. Steinfort,* 254 Wis. 89, 91, 35 N.W.2d 335 (1948); *Holzworth v. State,* 238 Wis. 63, 68, 298 N.W. 163

N.W.2d 361 (1967)). This is a question of law. *See Vocational, Technical & Adult Educ., Dist. 13 v. DILHR,* 76 Wis. 2d 230, 240, 251 N.W.2d 41 (1977).

(1941). The standard of care that the safe-place statute establishes is a higher standard of care than that which the law imposes through common-law negligence. *Dykstra,* 92 Wis. 2d at 26.

¶ 23. In our early discussions where we compared the safe-place statute and common-law negligence, we concluded that those who violated the standard of care under the safe-place statute also violated the standard of care for common-law negligence. *Krause,* 9 Wis. 2d at 552; *Paluch,* 1 Wis. 2d at 432–33; *Stellmacher,* 259 Wis. at 314; *Morrison,* 254 Wis. at 91; *Holzworth,* 238 Wis. at 68. This is a valid conclusion. More recently, we appear to have concluded that when the reverse occurs, *i.e.,* when a plaintiff does not prove a violation of the safe-place standard of care, a plaintiff could not prove a violation of the common-law negligence standard of care. *Balas,* 66 Wis. 2d at 426–27; *Merkley v. Schramm,* 31 Wis. 2d 134, 142, 142 N.W.2d 173 (1966); *Lealiou v. Quatsoe,* 15 Wis. 2d 128, 136, 112 N.W.2d 193 (1961). Our discussion in *Lealiou* appears to be the first time we made such a connection, which we set out without citing any authority:

> [I]f the defendant is found to have breached his duty under the safe-place statute, recovery is had for the breach of the higher degree of care, and if it is found the defendant has not breached the higher degree of care, he cannot be held to have breached the standard of care under common law.

*Lealiou,* 15 Wis. 2d at 136. In a later case, *Balas,* we attempted to explain ourselves as follows:

> At common law, the highest duty owed by an owner of land toward someone on the premises was that of ordinary care, owed to an invitee. This duty could be

179

satisfied by alternative means. The landowner might either have his premises in a reasonably safe condition or give the invitee adequate and timely warning of latent and concealed perils which are known to the invitor but not to the invitee. Another way of stating this same proposition is that there is no duty to inspect and warn unless it is shown that the premises were not in a reasonably safe condition. The statutory safe-place duty to construct and maintain a public building as safe as its nature will reasonably permit is not a lesser standard than that imposed by the common law. *A fortiori* no violation of a common-law duty is shown if violation of the safe-place statute cannot be established.

*Balas,* 66 Wis. 2d at 426–27 (internal citations omitted). These analyses are unsubstantiated and incorrect insofar as they preclude a common-law negligence claim if no violation of the safe-place standard of care is established, and we withdraw them. In our view, there is no reason why, if an employee or frequenter has not proved that the employer or owner violated the higher standard of care in Wis. Stat. § 101.11(1) that it necessarily follows that the employee or frequenter cannot prove that the employer or owner violated the lower standard of common-law negligence by committing a negligent act. As we have said, the safe-place statute addresses unsafe conditions, not simply negligent acts. *Gross,* 61 Wis. 2d at 47.

¶ 24. The enactment of the safe-place statute in 1911 substantially changed the landscape of an employer's duty to his employees to provide a safe work environment. *Rosholt,* 155 Wis. at 173 (noting that common law required only that the workplace be "reasonably safe," whereas the safe-place statute required the workplace to be as free from "danger to the life,

180

health or safety of employees . . . as the nature of the employment will reasonably permit"). The statute also required employers to provide a safe environment for those who frequent their businesses. *Carr v. Amusement, Inc.,* 47 Wis. 2d 368, 374, 177 N.W.2d 388 (1970). However, the law did not—and does not—release employers from their duty to act with reasonable care, as every other person in this state is required to do. *See Alvarado,* 262 Wis. 2d 74, ¶ 16 n.2; *Gritzner,* 235 Wis. 2d 781, ¶ 20.

■■■

¶ 25. Megal demonstrated no facts that could be used to show that the Bureau had constructive notice of the unsafe condition that caused her injury, as is necessary to establish a violation of the safe-place standard of care, but she may be able to show that the Bureau failed to exercise ordinary care. A person is negligent if the person, without intending to cause harm, either acts affirmatively or fails to act in a way that a reasonable person would recognize as creating an unreasonable risk of injury. *Rockweit v. Senecal,* 197 Wis. 2d 409, 424, 541 N.W.2d 742 (1995) (citation omitted). *See* Wis. JI-Civil 1005. Accordingly, Megal is entitled to proceed with her common law claim.

## III. CONCLUSION

¶ 26. Because we conclude that Megal's safe-place claim was properly dismissed, we affirm that part of the court of appeals decision. However, because we also conclude that the court of appeals erred when it affirmed the dismissal of Megal's negligence claim, we reverse that part of the court of appeals decision and remand for further proceedings.

*By the Court.*—The decision of the court of appeals is affirmed in part; reversed in part, and the cause is

remanded to the circuit court for further proceedings consistent with this opinion.

¶ 27. DIANE S. SYKES, J., did not participate.