Efraim DELGADILLO, Admr. of the Estates of Patsy Jean Burleson Dix and Jeffrey Allen Dix, Deceased, Plaintiff,

v.

W. G. ELLEDGE, Jr., Admr. of the Estate of Emerson E. Whitehurst, Deceased, Defendant and Third-Party Plaintiff,

v.

U. S. INDUSTRIES, INC., et al., Third-Party Defendants.

Ray LaPRADE, as Admr. of the Estate of John G. Dix, Deceased, Plaintiff,

v.

W. G. ELLEDGE, Jr., as Admr. of the Estate of E. E. Whitehurst, Deceased, Defendant and Third-Party Plaintiff,

U. S. Industries, Inc., et al., Defendants,

United States of America, Third-Party Defendant.

Ray LaPRADE, as Admr. of the Estate of Imogene Dix, Deceased, Plaintiff,

v.

W. G. ELLEDGE, Jr., as Admr. of the Estate of E. E. Whitehurst, Deceased, Defendnat and Third-Party Plaintiff,

U. S. Industries, Inc., et al., Defendants,

United States of America and Ray LaPrade, Admr. of the Estate of John Dix, Deceased, Third-Party Defendants.

Efraim DELGADILLO, as Admr. of the Estate of Ronnie Carrol Dix, Deceased, Plaintiff,

v.

W. G. ELLEDGE, Jr., as Admr. of the Estate of E. E. Whitehurst, Deceased, Defendant and Third-Party Plaintiff,

U. S. Industries, Inc., et al., Defendants,

United States of America and Ray LaPrade, Admr. of the Estate of John Dix, Deceased, Third-Party Defendants.

Nos. H 71–C–1, H 71–C–3 to H 71–C–5.

United States District Court,
E. D. Arkansas, E. D.

Jan. 21, 1972.

**828**

E. Harley Cox, Jr., Coleman, Gantt, Ramsay & Cox, Pine Bluff, Ark., and Smallwood, Darden &· Sumners, New Albany, Miss., for plaintiff Efraim Delgadillo, Admr. of Estates of Patsy Jean Burleson Dix and Jeffrey Allen Dix, Deceased.

Paul Wilkins Denton, and William Dean Peery, Memphis, Tenn., and Harry L. Ponder, Walnut Ridge, Ark., for plaintiff Efraim Delgadillo, Admr. of Estate of Ronnie Carrol Dix, Deceased, and for plaintiff Ray LaPrade, Admr. of the Estates of John G. Dix and Imogene Dix, Deceased.

James B. Sharp, Sharp & Sharp, Brinkley, Ark., for defendant W. G. Elledge, Jr., Admr. of the Estate of Emerson E. Whitehurst, Deceased.

G. D. Walker, Frierson, Walker, Snellgrove & Laser, Jonesboro, Ark., for defendants U. S. Industries, Inc., U. S. Industries, Inc., Southeastern Metals Div., and E. C. Hamm.

James P. Klapps, Trial Atty., Torts Section, U. S. Dept. of Justice, Washington, D. C., and Fletcher Jackson, Asst. U. S. Atty., Little Rock, Ark., for the United States.

## MEMORANDUM OPINION

OREN HARRIS, Chief Judge.

In these consolidated actions the third party defendant, United States of America, has filed a motion to dismiss each of the cases against the third party defendant, United States of America, on the basis that the third party complaint fails to state a claim against the United States upon which relief can be granted.

Further, third party defendant, United States of America, contends for dismissal of each of the cases against it on the basis that this court lacks jurisdiction of the subject matter by reason of the "discretionary function" exception to the Federal Tort Claims Act, 28 U.S.C. A. § 2680(a). To support the government's motion in each of the four cases consolidated, briefs have been filed. Responses with supporting briefs have been filed by the plaintiffs and third party plaintiffs in opposition to the government's motion to dismiss.

These consolidated tort actions were filed in February, 1971, by the respective plaintiffs as a result of a tragic automobile accident which occurred on August 14, 1970, on the east bound lane of Interstate Highway No. 40 in St. Francis County, Arkansas, near the town of Wheatley. There was a headon collision between two automobiles that caused the death of 7 people.

The plaintiffs, as legal representatives of the deceased parties, filed these four cases against W. G. Elledge, Jr., Administrator with Will annexed of the Estate of Emerson E. Whitehurst, Deceased. In three of the cases, H 71–C–3, 4 and 5, other defendants were named. In each of the cases W. G. Elledge, Jr., Administrator with Will annexed of the Estate of Emerson E. Whitehurst, Deceased, filed as third party plaintiff a third party complaint against the United States of America and others as third party defendants.

Jurisdiction in each of the causes is based on diversity of citizenship pursuant to 28 U.S.C.A. § 1332. The

amount in controversy in each of the cases exceeds $10,000, exclusive of interest and costs. Jurisdiction by the third party plaintiff against the United States of America, as third party defendant, is alleged under the Federal Tort Claims Act, 28 U.S.C.A. §§ 1346(b), 2671 et seq. Third party plaintiff, inter alia, seeks indemnity for any damages he might have to pay the plaintiffs, together with separate recovery of damages against each third party defendant for the death of his decedent.

The third party action against the United States of America under the Federal Tort Claims Act is predicated upon the alleged negligent planning, installation and maintenance of highway signs and directional arrows at the Wheatley interchange on Interstate 40 in St. Francis County, Arkansas.

In support of its motion to dismiss, the third party defendant, United States of America, insists that the responsibility for the design, construction and maintenance of Interstate 40 within the State of Arkansas was by statute and in fact vested in the State of Arkansas rather than the federal government.

For the purposes of the government's motion in each of the cases, the applicable statutes are as follows:

28 U.S.C.A. § 1346(b) Subject to the provisions of chapter 171 of this title, the district courts, together with the United States District Court for the District of the Canal Zone and the District Court of the Virgin Islands, shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C.A. § 2680(a) Exceptions

The provisions of this chapter and section 1346(b) of this title shall not apply to—

(a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

The statutory provisions for Federal-Aid Highways pertinent to the issues concerned with the motions to dismiss by the government in these cases are included in 23 U.S.C.A. § 101 et seq., to-wit:

23 U.S.C.A. § 105(a) Programs

(a) As soon as practicable after the apportionments for the Federal-aid systems have been made for any fiscal year, the State highway department of any State desiring to avail itself of the benefits of this chapter shall submit to the Secretary for his approval a program or programs of proposed projects for the utilization of the funds apportioned. The Secretary shall act upon programs submitted to him as soon as practicable after the same have been submitted. The Secretary may approve a program in whole or in part, but he shall not approve any project in a proposed program which is not located upon an approved Federal-aid system.

23 U.S.C.A. § 106(a), (b) Plans, specifications, and estimates

(a) Except as provided in section 117 of this title, the State highway department shall submit to the Secretary for his approval, as soon as practicable after program approval, such surveys, plans, specifications, and esti-

mates for each proposed project included in an approved program as the Secretary may require. The Secretary shall act upon such surveys, plans, specifications, and estimates as soon as practicable after the same have been submitted, and his approval of any such project shall be deemed a contractual obligation of the Federal Government for the payment of its proportional contribution thereto. In taking such action, the Secretary shall be guided by the provisions of section 109 of this title.

(b) In addition to the approval required under subsection (a) of this section, proposed specifications for projects for construction on the Federal-aid secondary system, except in States where all public roads and highways are under the control and supervision of the State highway department, shall be determined by the State highway department and the appropriate local officials in cooperation with each other.

23 U.S.C.A. § 109(a), (b) Standards

(a) The Secretary shall not approve plans and specifications for proposed projects on any Federal-aid system if they fail to provide for a facility (1) that will adequately meet the existing and probable future traffic needs and conditions in a manner conducive to safety, durability, and economy of maintenance; (2) that will be designed and constructed in accordance with standards best suited to accomplish the foregoing objectives and to conform to the particular needs of each locality.

(b) The geometric and construction standards to be adopted for the Interstate System shall be those approved by the Secretary in cooperation with the State highway departments. Such standards, as applied to each actual construction project, shall be adequate to enable such project to accommodate the types and volumes of traffic anticipated for such project for the twenty-year period commencing on the date of approval by the Secretary, under section 106 of this title, of the plans, specifications, and estimates for actual construction of such project. The right-of-way width to the Interstate System shall be adequate to permit construction of projects on the Interstate System to such standards. The Secretary shall apply such standards uniformly throughout all the States.

23 U.S.C.A. § 110(a), (b) Project agreements

(a) As soon as practicable after the plans, specifications, and estimates for a specific project have been approved, the Secretary shall enter into a formal project agreement with the State highway department concerning the construction and maintenance of such project. Such project agreement shall make provision for State funds required for the State's pro rata share of the cost of construction of such project and for the maintenance thereof after completion of construction.

(b) The Secretary may rely upon representations made by the State highway department with respect to the arrangements or agreements made by the State highway department and appropriate local officials where a part of the project is to be constructed at the expense of, or in cooperation with, local subdivisions of the State.

23 U.S.C.A. § 114(a) Construction

(a) The construction of any highways or portions of highways located on a Federal-aid system shall be undertaken by the respective State highway departments or under their direct supervision. Except as provided in section 117 of this title, such construction shall be subject to the inspection and approval of the Secretary. The construction work and labor in each State shall be performed under the direct supervision of the State highway department and in accordance with the laws of that State and applicable Federal laws. * * *

23 U.S.C.A. § 116(a) Maintenance

(a) It shall be the duty of the State highway department to maintain, or cause to be maintained, any project constructed under the provisions of this chapter or constructed under the provisions of prior Acts. * * *

Pursuant to the applicable statutes quoted above the Wheatley interchange as a part of Interstate 40 was designed and constructed under the Federal-Aid Interstate System. The government states, which is undisputed, that designated as Project No. I–40–5 (44)223, the State of Arkansas, acting through the State Highway Commission, entered into an agreement dated December 15, 1965, with the Bureau of Public Roads, U. S. Department of Commerce, to undertake the Wheatley Interchange Project at a total estimated cost of $1,474,850, of which $1,327,365 would be provided by the Federal government. Among the various provisions contained in the agreement, the State of Arkansas undertook the following: (1) responsibility for all work covered by the project (Provision 1); (2) engineering and economic investigations (Provision 3); and (3) responsibility for maintenance of the project in accordance with 23 U.S.C.A. § 116.

A similar agreement containing identical provisions was entered into for the "signing" (installation of signs) for the Wheatley Interchange segment of Interstate 40. Project No. I–40–5 (42)220, dated December 15, 1965.

It is further stated by the government, and undisputed, that funds appropriated by Congress for the highway program are apportioned to the states according to a statutory formula, 23 U.S.C.A. §§ 104(a), 104(b)(1), 106(a) and 114(a). The states create general construction programs to apply these funds and prepare project proposals and estimates, 23 U.S.C.A. § 105. Grants for a proposed project are awarded under the Federal-aid program upon the submission of plans, specifications and estimates by the state as provided by 23 U.S.C.A. § 106(a). After approval of the project, construction projects are awarded by the state and the state pays the contractor and remains responsible for the supervision of construction and for the maintenance of the highways after completion. 23 U.S.C.A. §§ 114(a), 116.

It is traditional that our statutory scheme for Federal-aid highway programs is limited to federal financial assistance. The primary purpose which has been made abundantly clear throughout the Federal-aid programs is to protect the federal funds against wasteful or inefficient Federal expenditures. The fact that the Congress has more recently declared an interest in other phases such as safety in no way detracts from the overriding and predominate purposes of the Federal-aid highway programs commencing with the original Federal-Aid Road Act of 1916.

Included in excellent briefs filed by the parties are many decisions which the respective parties contend are applicable and have a bearing on the primary issue in each of the government's motions to dismiss. The Court has had an opportunity to review the various citations and concludes that the decision of Mahler v. United States, 306 F.2d 713 (3 Cir. 1962) cert. den'd 371 U.S. 923, 83 S.Ct. 290, 9 L.Ed.2d 231, is persuasive. This Court adopts the views and conclusions reached in that case as decisive in these consolidated cases.

There, as here, the plaintiffs contend that the federal highway program imposed a duty on the United States to the travelling public to make sure that the segment on the road on which the accident occurred was constructed and maintained properly. Specifically, the plaintiffs in these cases contend that the United States failed to fulfill its duty by failing to provide for and make inspections in connection with adequate signs at the intersection after construction was completed, which according to the allegations of the complaint, would have prevented the incident that caused the tragedy and 7 people to lose their lives.

It is well established that the Court consider the motions in the light most favorable to the plaintiffs and in doing so, the plaintiffs' version of the facts must be accepted. As in Pennsylvania, under the law of Arkansas the United States must be deemed to have breached a duty to the plaintiffs if the requirements under applicable statutes for approval of highway projects and for its inspection imposed duties for the benefit of the travelling public. If this should be so, recovery may be had by the plaintiffs against the United States under the Federal Tort Claims Act, which provides that the government shall be held liable when injury or death is caused by the negligent or wrongful act or omission of an employee of the government while acting in the scope of his office or employment and under circumstances where the United States, if a private person, would be liable in accordance with the law of the place where the act or omission occurred. 28 U.S.C.A. § 1346(b).

To reach an appropriate conclusion, it is proper to determine the intent of Congress in enacting the Federal-aid legislative program.[1]

In *Mahler*, supra, the Court concluded:

"The recital of legislative history of federal-aid legislation [highways] might be prolonged to a much greater length but what we have said makes it clear, we think, that in enacting the provisions respecting approval and inspection by the federal government, it was not the intention of Congress to impose a duty on the Secretary of Commerce, on the Bureau of Public Roads, or on the United States or any of its agencies, to make sure that a member of the travelling public, a user of a federal-aid highway, was not injured because of negligence in carrying out these provisions. The concern of Congress was to make sure that federal funds were effectively employed and not wasted." p. 721 of 306 F.2d. See Note 8 citing United States v. Neustadt, 366 U.S. 696, 81 S.Ct. 1294, 6 L.Ed. 614 (1961).

In concluding that the federal statutes relating to approval, inspection and maintenance in connection with highways do not create a duty on the part of the United States available to the plaintiffs, it remains that if there is liability under the Federal Tort Claims Act, it must be pursuant to the general Arkansas law. In carefully weighing the contentions of the plaintiffs and the authorities cited by them, as well as other decisions, the Court has discovered no applicable rule of law in Arkansas which would impose liability on a private person under similar circumstances.

The plaintiffs contend and with some merit that Congress has specifically directed that highway safety be considered in passing on highway designs. This is obvious with the language in § 109(a), supra.[2]

Albeit and assuming, without deciding, that Arkansas law would impose liability on a private person under similar circumstances or the "conducive to safety" requirement would bring the government under the Federal Tort Claims Act for its participation in the highway program, it cannot be disputed that Congress provided numerous standards by which the Secretary of Commerce must be guided, which requires the Secretary to make judgments. In Mahler v. Unit-

1. In Mahler v. United States, supra, Chief Judge Biggs, of the Third Circuit, gives an excellent summary of the legislative history with respect to roads which Congress has provided under the authority conferred upon it by Article I, Section 8, of the Constitution to regulate interstate commerce, etc. The summary commences on page 716, 306 F.2d, and continues to page 721.

2. The legislative history indicates that this provision was designed primarily to protect the federal investment. See 83 Cong. Rec. 6383–6384 (1938). However, it is apparent that this language must be regarded as having a subsidiary purpose, that of promoting the construction of *safe* highways.

ed States, supra, the Court stated at p. 723 with reference to the duties and functions of the Secretary of Commerce as to the approval of designs and specifications for highway projects, as follows:

"We cannot avoid the conclusion that this determination by the Secretary, as well as any active participation by the federal government in the design, falls within the discretionary function exception to the Federal Tort Claims Act, 28 U.S.C., § 2680(a). Such a result seems to us to be compelled by the Supreme Court's opinion in Dalehite v. United States, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953). It is there stated, at pp. 35–36, 73 S.Ct. at p. 968: '[T]he " 'discretionary function or duty' " that cannot form a basis for suit under the Tort Claims Act includes more than the initiation of programs and activities. It also includes determinations made by executives or administrators in establishing plans, specifications or schedules of operations. Where there is room for policy judgment and decision there is discretion.' The Court found the United States not liable for decisions made 'at a planning rather than operational level and * * * [involving] considerations more or less important to the practicability of the Government's fertilizer program.' 346 U.S. at p. 42, 73 S.Ct. at p. 971. The determination by the Secretary of Commerce to approve the plans and specifications for the Penn-Lincoln project, the decision which initiated the federal government's financial participation, was obviously a policy judgment of the type most important

to the success of the federal-aid highway program. It is administrative action requiring the conscious weighing of such factors as location and anticipation of future traffic flow. The same must be said of federal guidance during the preapproval design stage. As such, we think that these decisions fall on the planning side of the planning-operational distinction drawn in the Dalehite case, subsequently adopted and approved in Eastern Airlines, Inc. v. Union Trust Co., 95 U.S.App. D.C. 189, 221 F.2d 62, 76–77 (D.C. Cir.) aff'd per curiam sub nom. United States v. Union Trust Co., 350 U.S. 907, 76 S.Ct. 192, 100 L.Ed. 799 (1955)."

The plaintiffs rely heavily on Indian Towing Co., Inc. v. United States, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955) and American Exch. Bank of Madison, Wis. v. United States, 257 F.2d 938. With deference to the parties the Court has no difficulty in concluding that these and other cited cases are distinguishable to the instant cases.[3]

■ Therefore, the Court concludes that in these cases § 2680(a) withdraws the government's waiver of immunity insofar as the complaint is based on alleged negligent planning, approval, inspection and maintenance of the highway project involved in these cases by the Secretary of Commerce.

In view of these conclusions, the motions of the third party defendant, United States of America, will be granted and an appropriate order will be entered dismissing the complaint in each of the cases as to the United States of America.

---

3. As stated in Mahler v. United States, at p. 723, 306 F.2d, in Note 13: "Although there are portions of the Dalehite opinion which are no longer authoritative, we do not read Rayonier, Inc. v. United States, 352 U.S. 315, 77 S.Ct. 374, 1 L.Ed.2d 354 (1957) or Indian Towing Co. v. United States, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955), as having retracted the language quoted. Therefore the plaintiffs' citation of Jemison v. The Duplex, 163 F.Supp. 947 (S.D.Ala.1958), a case decided against the United States on analogous facts, must be rejected, inasmuch as we are unable to reconcile the holding in that case with the pertinent language of Dalehite." It should also be noted that that case having to do with an injury in construction at a wharf is distinguishable from the instant cases.