Hubert DAYE, et al., Appellants,

v.

The COMMONWEALTH OF PENNSYL-
VANIA, et al.

Mindy MEYERS, an infant, by her parent
and natural guardian, Marvin Mey-
ers, et al., Appellants.

v.

The COMMONWEALTH OF PENN-
SYLVANIA.

Nos. 72–1769, 72–1840.

United States Court of Appeals,
Third Circuit.

Argued May 17, 1973.

Decided, Aug. 3, 1973.

Richard F. Stevens, Theodore J. Zell-
er, Jr., Butz, Hudders & Tallman, Allen-
town, Pa., for appellant in No. 72–1769.

James B. Zane, Zane and Zane, New
York City, for appellant in No. 72–1840.

Daniel J. Ryan, John J. Walsh, Jr.,
LaBrum & Doak, Philadelphia, Pa., for
appellee in No. 72–1769.

J. Shane Creamer, Atty. Gen., Edward
V. A. Kussy & Edward A. Hosey, Asst.
Attys. Gen., Harrisburg, Pa., for appel-
lee in No. 72–1769 and No. 72–1840.

Before VAN DUSEN, GIBBONS and
ROSENN, Circuit Judges.

OPINION OF THE COURT

VAN DUSEN, Circuit Judge.

This is an appeal from the opinion
and order of the United States District
Court for the Eastern District of Penn-
sylvania entered on June 30, 1972 [1]
which granted the motions of defendants

1. The opinion of the District Court is reported in 344 F.Supp. 1337 (E.D.Pa.1972).

to dismiss the complaints brought in a tort action for damages arising out of a bus accident allegedly caused by the improper design, construction and maintenance of an interstate highway and its safety devices.

The plaintiffs in No. 72–1769 are the driver and the corporate owner of the bus (hereafter jointly referred to as *Daye*). They demanded damages for injuries suffered in the accident by the driver and the bus company. They also sought to bring a class action under F. R.Civ.P. 23 on behalf of the injured and deceased passengers.[2] The defendants in *Daye* are the Commonwealth of Pennsylvania, the Department of Transportation in that state and named individuals, who were officials with the Department of Transportation.

The complaint in No. 72–1840 was filed by Marvin Meyers on behalf of his daughter Mindy, and by Stanley Bienenfeld on behalf of his daughter Lynda (hereafter jointly referred to as *Meyers*). In this action the defendants were the Commonwealth of Pennsylvania and the County of Lehigh, Pennsylvania.[3]

The tragedy occurred on July 15, 1970 when a chartered tour bus carrying a group of young people, aged 10 to 17, and their counselors was proceeding westbound on U.S. 22 (Interstate 78) about 12 miles west of Allentown, Pennsylvania. A light rain was falling at the time and had been preceded by a heavy shower. The wet pavement allegedly caused the front wheels of the bus to hydroplane, which initiated a skid from which the driver was unable to recover. The bus rotated one hundred and eighty degrees (180°) clockwise through the guardrail alongside the highway and off the northern embankment. It overturned at the bottom of the embankment, ejecting eighteen persons and pinning six of them under the left side of the bus. Seven children were fatally injured.[4]

The study by the National Transportation Safety Board suggested that contributing factors to the accident included:

"low basic skid resistance of the pavement in wet weather, and the probable presence of water draining across the pavement in an abnormal manner. The fatalities and injuries were caused by an ineffective highway guardrail which failed to prevent the bus from rolling down an embankment, by bus windows which failed to prevent ejection of some passengers, in some cases, by the absence of occupant restraints."[5]

Motions to dismiss were filed by the defendants in both *Daye* and *Meyers*. The Commonwealth in essence argued that it had not waived its immunity under the Eleventh Amendment of the Constitution,[6] that the action was not authorized by the laws of the Commonwealth and it was in violation of Article I, Section 11 of the Pennsylvania

---

2. The District Court concluded that the action brought by *Daye* was "not maintainable as a class action in that it fails to meet the prerequisites set forth in Rule 23 of the Federal Rules of Civil Procedure." 344 F.Supp. at 1343. The dismissal of the *Daye* complaint insofar as it alleged a class action was not appealed, and has, in any event, been rendered moot by the conclusions of this opinion on the liability issues.

3. The complaint filed by *Meyers* named the County of Lehigh. Based on the stipulation of plaintiffs an order dismissing the action without prejudice against the County was entered May 1, 1972. See Doc. 8.

4. National Transportation Safety Board, Highway Accident Report, Report No. NTSB–HAR–71–8.

5. Id. at 38.

6. The Eleventh Amendment to the United States Constitution provides:
"The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

Constitution.[7] The Department of Transportation entered a similar motion to dismiss. The named defendants in their motion to dismiss contended that the motion was not maintainable as a class action; and that the defendants were public employees and officials of the Commonwealth and were acting within the course and scope of their official duties. The motions to dismiss were granted and this appeal followed.

The parties raise a number of contentions, but the issue central to both their appeals is whether the Commonwealth by its acceptance of funds under the Federal-Aid Highway Act[8] entered into an area of federal preemption resulting in a waiver of its Eleventh Amendment immunity from suit, or whether Congress in enacting the Highway Safety Act[9] intended to create implied causes of action that would permit private parties to pierce the states' sovereign immunity statutes in order to be compensated for injuries sustained as a result of a state's violation of the regulations promulgated under that Act?

Both *Daye* and *Meyers* suggest that since our decision in Mahler v. United States, 306 F.2d 713 (3rd Cir. 1962) the Congress has enacted legislation which clearly establishes an intention that states receiving federal highway funds will waive their immunity from suit.[10] They also contend that the recently enacted Highway Safety Act indicates an implied, if not an express, intention by Congress to regulate the interstate highway systems,[11] and thus subjects the states to Congressional regulation under the power reserved to the federal government by the commerce clause of the Constitution.[12]

---

7. Article I, Section 11 of the Pennsylvania Constitution, P.S., provides:
   ". . . Suits may be brought against the Commonwealth in such manner, in such courts, and in such cases as the Legislature may by law direct."

8. 23 U.S.C. § 101 et seq.

9. 23 U.S.C. § 401 et seq.

10. Plaintiffs contend that the Commonwealth by failing to use reasonable care in the design of U.S. Route 22 violated 23 U.S.C. §§ 106(a), 109(a), 109(d) and 109(e). They contend that failure to utilize reasonable care in the construction violated 23 U.S.C. § 114(a). They contend that the failure to provide reasonable care in the maintenance of that highway violated 23 U.S.C. § 116(a) and 116(c).

11. 23 U.S.C. § 402(a) provides:
    "(a) Each State shall have a highway safety program approved by the Secretary, designed to reduce traffic accidents and deaths, injuries, and property damage resulting therefrom. Such programs shall be in accordance with uniform standards promulgated by the Secretary. Such uniform standards shall be expressed in terms of performance criteria. Such uniform standards shall be promulgated by the Secretary so as to improve driver performance (including, but not limited to, driver education, driver testing to determine proficiency to operate motor vehicles, driver examinations (both physical and mental) and driver licensing) and to improve pedestrian performance. In addition such uniform standards shall include, but not be limited to, provisions for an effective record system of accidents (including injuries and deaths resulting therefrom), accident investigations to determine the probable causes of accidents, injuries, and deaths, vehicle registration, operation, and inspection, highway design and maintenance (including lighting, markings, and surface treatment), traffic control, vehicle codes and laws, surveillance of traffic for detection and correction of high or potentially high accident locations, and emergency services. Such standards as are applicable to State highway safety programs shall, to the extent determined appropriate by the Secretary, be applicable to federally administered areas where a Federal department or agency controls the highways or supervises traffic operations. The Secretary shall be authorized to amend or waive standards on a temporary basis for the purpose of evaluating new or different highway safety programs instituted on an experimental, pilot, or demonstration basis by one or more States, where the Secretary finds that the public interest would be served by such amendment or waiver."

12. The appellants place great weight on the decision in Individual Members of

In *Mahler* the contention was made by the plaintiff that the United States failed to fulfill its duty by causing to be approved defective highway plans, by failing to discover faulty construction, and by failing to provide for and make inspections after construction on the interstate highways was completed.[13] This court rejected those arguments holding:

"that in enacting the provisions respecting approval and inspection by the federal government, it was not the intention of Congress to impose a duty on the Secretary of Commerce, on the Bureau of Public Roads, or on the United States or any of its agencies, to make sure that a member of the travelling public, a user of a federal-aid highway, was not injured because of negligence in carrying out these provisions. The concern of Congress was to make sure that federal funds were effectively employed and not wasted.

. . . . .

"In light of the legislative history traced above, it is plain that the appellants cannot successfully rely on the federal highway acts unless they are able to show that legislation following the Act of 1921 has affixed to the inspection and approval sections the additional purpose of securing the safety of those using the federal-aid highways.

. . . . . .

"[w]e have discovered nothing which would indicate that Congress has redesigned the inspections during and after construction to function as anything more than that which was originally intended, viz., a means of protecting the federal investment. Without such an expansion of purpose, the inspection provisions of the statute do not create a duty running to these plaintiffs." (footnote omitted)

Mahler, *supra,* 306 F.2d at 721, 722; see also Daniel v. United States, 426 F.2d 281 (5th Cir. 1970); Delgadillo v. Elledge, 337 F.Supp. 827 (E.D.Ark.1972).

■ It is clear that the Eleventh Amendment denies the federal courts jurisdiction to entertain a suit brought by a private party against a state absent that state's consent. E. g., Employees of the Department of Public Health & Welfare of Missouri, et al. v. Department of Public Health & Welfare of Missouri, 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973); Ford Motor Co. v. Department of Treasury of Indiana, 323 U.S. 459, 464, 65 S.Ct. 347, 89 L.Ed. 389 (1945). However, a state may, of course, waive its immunity from suit. Parden v. Terminal R. Co., 377 U.S. 184, 186, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964); Petty v. Tennessee-Missouri Comm'n., 359 U.S. 275, 79 S.Ct. 785, 3 L.Ed.2d 804 (1959).

In *Parden* a suit was brought against a State-owned railroad to recover dam-

the San Antonio Conservation Society v. Texas Highway Department, 446 F.2d 1013 (5th Cir. 1971) and language in Pennsylvania Environmental Council, Inc. v. Bartlett, 454 F.2d 613 (3rd Cir. 1971) to support their assertion. However, in *Texas Highway Department* the suit was for injunctive relief designed to enforce the provisions of federal law which set forth conditions under which federal aid may be distributed to the states. Involved in that action was whether the state of Texas needed to comply with Section 102(2) of the National Environmental Policy Act of 1969, 42 U.S.C. § 4332 (Supp.1971), which requires an environmental impact statement on "major federal actions significantly affecting the quality of the hu-

man environment. . . ." The Fifth Circuit held that such a statement would be necessary. Likewise, in *Bartlett,* the issue involved the effect of the National Environmental Policy Act of 1969. The parties in the present action seek monetary damages from the state treasury, precisely what the Eleventh Amendment sought to avoid. We believe that this suit is different from an action to require the proper expenditure of federal funds. See Ward v. Ackroyd, 344 F. Supp. 1202 (D.Md.1972).

13. While Mahler involved a claim asserted under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–2680, and is therefore not completely apposite, its discussion of the federal highway program is instructive.

ages under the Federal Employers' Liability Fund. The Court held that Alabama by entering into interstate commerce as a rail carrier waived its immunity from suit and "necessarily consented to such suit as was authorized by that Act." 377 U.S. at 192, 84 S.Ct. at 1213.

In *Petty* the Court recognized that a state may also waive its immunity by forming an interstate agency pursuant to a compact entered into with consent of Congress, which specifically creates a right "to sue and be sued" in that agency. Both *Parden* and *Petty* demonstrate that a waiver most likely will take place when a state "leaves the sphere that is exclusively its own and enters into activities subject to congressional regulation. . . ." At that point, "its subjects itself to that regulation as fully as if it were a private person or corporation." 377 U.S. at 196, 84 S. Ct. at 1215. However, mere entry into such sphere alone will not constitute a waiver. "Congress must express an intent to override the state's immunity." Red Star Towing and Transportation Co. v. Department of Transportation of N. J., 423 F.2d 104, 106 (3rd Cir. 1970); see Employees of the Department of Public Health & Welfare, *supra.*

■ Although a state at its pleasure may waive its Eleventh Amendment immunity, the conclusion by a court that there has been a waiver will not be lightly inferred. *Petty, supra* 359 U.S. at 276, 79 S.Ct. 785. The cases make clear that when a waiver does take place it must be clear and unequivocal. Great Northern Life Ins. Co. v. Read, 322 U.S. 47, 64 S.Ct. 873, 88 L.Ed. 1121 (1944); Rothstein v. Wyman, 467 F.2d 226 (2nd Cir. 1972); O'Neill v. Commonwealth of Penna., 459 F.2d 1 (3rd Cir. 1972);

Knight v. New York, 443 F.2d 415 (2nd Cir. 1971).

■ We do not find such a waiver merely because Pennsylvania receives federal highway funds. We have carefully examined the various provisions of the Federal-Aid Highway Act and the Highway Safety Act, the committee reports explaining the sections of those Acts,[14] and debates that took place when the Acts were considered and passed. We are unable to say that Congress conditioned the receipt of those funds upon the states' willingness to waive their immunity from tort liability; nor are we able to say that Congress intended a waiver to implicitly take place by its mere enactment of the Highway Safety Act. Cf. Rothstein v. Wyman, *supra.*

■ It is noted that the Senate Report to the Federal-Aid Highway Act of 1966, while tracing the historical role of government in the construction and maintenance of public highways recognized that

"[I]n accordance with the concepts of division of authority between the Federal Government and the States, the legislation reserved to the States the initiative in determining what roads were to be built, the character of their improvement in the preparation of plans and specifications, the acquisition of rights-of-way and the awarding of contracts—subject to Federal approval. It placed immediate supervision of construction in the hands of the State highway departments, but provided for Federal review and approval. Thus, each level of government had its own responsibilities and authority and a balanced partnership between the States and the Federal Government was initiated."

14. For the legislative history of 23 U.S.C. § 402 see 1966 U.S.Code Cong. and Adm. News at 2741; 1968 U.S.Code Cong. and Adm.News at 3482; 1970 U.S.Code Cong. and Adm.News at 5392. Discussion of 23 U.S.C. § 106 may be found in 1963 U.S.Code Cong. and Adm.News at 1027; and 1970 U.S.Code Cong. and Adm.News at 5392; for the history of 23 U.S.C. § 109 see 1966 Code Cong. and Adm.News at 2800; and 1970 U.S.Code Cong. and Adm.News at 5392. 23 U.S.C. § 114 is discussed in the 1960 U.S.Code Cong. and Adm.News at 3159.

1966 U.S.Code Cong. and Adm.News, at 2801. There is no indication that this division of authority has been altered. Therefore, the District Court properly concluded:

> "We, therefore, hold: (1) in voluntarily applying for and accepting federal funds under the Federal-Aid Highway Act and in entering into interstate commerce in the construction of interstate highways, the Commonwealth has not waived its Eleventh Amendment immunity; and (2) neither the Federal-Aid Highway Act nor the Highway Safety Act create an implied cause of action to recover damages for personal injuries sustained as a result of a violation of the standards set forth therein or regulations promulgated thereunder."

344 F.Supp. at 1349. This Court may not graft on to Congressional actions an intent which is neither expressly, nor implicitly provided.

*Daye,* in addition, contends that if there has not been a waiver of immunity, the immunity of Pennsylvania and the Department of Transportation must fall before the guarantees of the Fourteenth Amendment. We have held otherwise. See O'Neill v. Commonwealth, *supra,* 459 F.2d at 2.

■ *Daye* also alleges that the District Court erred in dismissing the suit against the named individual officers of the Pennsylvania Department of Transportation. However, the recent decision in Dubree v. Commonwealth of Penna., et al., 8 Pa.Cmwlth. 567, 303 A.2d 530 (1973) reaffirmed the doctrine that in Pennsylvania state highway officials may escape liability where they acted within the scope of their authority and their alleged negligent conduct was not intentionally malicious, wanton, or reckless.[15] Since *Daye's* complaint did not allege intentional or malicious negligence, the District Court properly dismissed the action against the named defendants. See 344 F.Supp. at 1349–1350.

We have considered *Meyers'* contention that interference with the right to engage in interstate commerce is a constitutional tort for which the courts will imply a remedy and reject it.

■ In conclusion we note that while the doctrine of immunity is under attack in Pennsylvania and has been withdrawn from governmental units, municipal corporations and quasi-corporations, Ayala, Jr., et al. v. Philadelphia Board of Public Education, Pa., 305 A.2d 877 at n. 2 (May 23, 1973), it nevertheless remains the law in Pennsylvania that state governmental functions are protected. Biello v. Pennsylvania Liquor Control Board, Pa., 301 A.2d 849 (1973). Whether or not the doctrine of sovereign immunity is an "anachronism" that provides "unjust" results, *Biello, supra* (Nix dissenting), is for the courts of the Commonwealth to resolve. We are required to follow the state law insofar as diversity is a jurisdictional basis in these suits and are unable to alter that which the state courts and legislature have refused to change.

The order of the District Court dismissing the complaints in No. 72–1769 and No. 72–1840 will be affirmed.

15. 303 A.2d 530; see also Ammlung v. City of Chester et al., 224 Pa.Super. 47, 302 A.2d 491 (1973).