Lisellotte **MOYER**, as widow of Larry Eugene Moyer, and as Administratrix of the Estate of Larry Eugene Moyer, Deceased, Plaintiff,

v.

**UNITED STATES of America,** Defendants.

No. 66–601.

United States District Court S. D. Florida.

Aug. 12, 1969.

J. Arthur Hawkesworth, and Fredrico D. Fazio, of Hawkesworth & Kay, Miami, Fla., for plaintiff.

John G. Laughlin, Chief, Torts Section, Dept. of Justice, Washington, D. C., and Philip Silverman, Dept. of Justice, Washington, D. C., for United States.

### OPINION
LAYTON, District Judge.*

In this action, Lisalette Moyer, as the widow of Larry Eugene Moyer and as the Administratrix of the Estate of Larry Eugene Moyer, brought suit against Martin Marietta Corporation Aircraft Mechanics, Inc., and the United States, for the wrongful death of her husband. The action against Martin Marietta Corporation and Aircraft Mechanics, Inc., ended during trial when the Court granted motions for directed verdicts in favor of each of these defendants. The case against the United States was tried to an advisory jury pursuant to Rule 39(c) of the Federal Rules of Civil Procedure.

The jury found that the United States was negligent: (1) in delivering the aircraft and ejection seat in question to American Airmotive when the United States knew, or should have known, that the seat was improperly designed and manufactured; and (2) in preparing and issuing Technical Order No. 876. Further, the jury found that the negligence of the United States was the, or one of the, legal causes of Larry Moyer's death, and that the United States had not established that Larry Moyer was guilty of negligence which was a contributing legal cause of his death. The jury then assessed plaintiff's damages in the sum of $700,000.00.

This case is now before the Court pursuant to Rule 52(a) which provides "in all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon * * *."

Before considering the factual issues which were submitted to the Advisory Jury, I am confronted with a motion made by the United States to dismiss the plaintiff's suit for lack of jurisdiction.

Plaintiff's action against the United States is predicated on 28 U.S.C. § 1346 (b), which provides: "* * * the

* Sitting in the United States District Court for the Southern District of Florida by assignment.

district courts, * * * shall have exclusive jurisdiction of civil actions * * * for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." The United States bases its motion to dismiss entirely on 28 U.S.C. § 2680, which provides: "The provisions of this chapter and section 1346 (b) of this title shall not apply to—(a) Any claim * * * based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."

In sum, it is the Government's position that both of the charges of negligence leveled by the plaintiff against the United States fall within the so-called "discretionary function" exception just quoted. More particularly, as regards the plaintiff's charge that the United States had knowledge that the aircraft which it delivered to American Airmotive had an improper design, the Government contends that the selection of the aircraft and the aircraft equipment are matters entrusted to the Secretary of the Air Force pursuant to 10 U.S.C. § 8012 and § 9531. Hence, the Government suggests that "the decision to acquire the B–57 type aircraft with whatever features are complained of as improper, is protected by the 'discretionary function' exception." In connection with the second charge of negligence, the Government argues that the preparation and promulgation of Technical Order No. 876 also falls within the discretionary function exception. In support of its position, the Government argues: "The Technical Order was prepared by SAAMA,[1] approved by WRAMA,[2] and ratified by the chain of command representatives as high as the Armed Forces Chief of Staff, and affected not only [the aircraft in question], but B–57A and RB–57A aircraft throughout the Air Force."

The parties agree that critical to deciding whether particular acts of omissions by Government employees are protected by the "discretionary function" exception is whether the acts or omissions occurred on the *planning* level or whether they occurred at the operational level. Dalehite v. United States, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953). In the former case, the activities would be included within the purview of the discretionary function exception, and the plaintiff's claim would be barred. However, if the acts complained of occurred at the operational level, then the full effect of § 1346(b) would apply and the Government would have to respond as would a private person in a similar position. Indian Towing Co., Inc. v. United States, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955); American Exchange Bank of Madison, Wis. v. United States, 257 F.2d 938, 78 A.L.R.2d 879 (7th Cir. 1958).

As regards the selection of the B–57A type aircraft, and in particular the ejection seat and ejection mechanism to be employed in that aircraft, I find that these decisions reflect choices made on a planning level, which in the most immediate sense, affect the political interests of the nation. These decisions, then, are protected by the "discretionary function" exception defined in § 2680 (a).

The characterization of the acts or omissions with regard to Technical Order No. 876 will require a somewhat more extended discussion.

After the B–57A aircraft had been in service for some time, apparently, at an executive level in the chain of com-

---

1. SAAMA—San Antonio Air Material Area.

2. WRAMA—Warner Robbins Air Material Area.

mand, the decision was made to give added protection to the ejection trigger mechanism contained in the right arm rest, in order to further guard against inadvertent jettisoning. That decision was communicated to an engineer named Perkins. It was Perkins' function, or duty, as I understand it, to devise a safety guard which would adequately prevent accidental firing of the ejection mechanism. Perkins' authority contemplated his selecting a method by which this objective could be obtained. The modification selected by Perkins called for: (1) extending the trigger guard with an elbow shaped sleeve; (2) extending the trigger with a curved metal rod which would lock itself in the extended trigger guard; (3) putting a safety pin and lanyard through the trigger and trigger guard and (4) inserting a down stop in the telescoping tube which facilitated the lowering and the raising of the right arm rest, in order to prevent the banging of the safety pin on the seat itself.

I assume, without deciding, that to the point of the selection of a method for accomplishing the objective of preventing inadvertent jettisoning, the Government's activities were at a planning rather than an operational level, reflecting decisions intimately tied to decisions regarding the selection of materials and methods to maintain a ready Air Force.

After the particular method of modification was selected by Mr. Perkins, he consulted Mr. Casanova who drafted the Technical Order here involved. Mr. Casanova, so far as I am able to ascertain from the record, had only the most limited kind of discretion. Mr. Casanova did not have authority to alter the modification as developed by Mr. Perkins, nor did he have authority to go beyond the modification as it was explained to him. Mr. Casanova's job was essentially that of a scrivener, i. e., his function was to incorporate into a written document the plans developed by Mr. Perkins. In these circumstances, I am convinced that Mr. Casanova's ac-

tivities, standing alone, were activities at the operational level.

This determination, however, does not end our inquiry. Two additional matters must be considered. First, the Government suggests that because Technical Order No. 876 had to be approved by the SAAMA and WRAMA Commands, the Technical Order itself comes within the discretionary function exception. Because the Government has not demonstrated that the approval by SAAMA and WRAMA was in any meaningful sense an exercise of discretion with regard to the drafting of the Technical Order, I am unable to conclude that this approval elevated Mr. Casanova's work product to a stage where it is protected by the discretionary function exception.

■ Secondly, I must determine whether the charges of negligence directed at Technical Order No. 876 are leveled at work performed by Mr. Casanova. The negligence charged is that the Technical Order was vague and ambiguous; more particularly, that the Technical Order failed to include an expressed warning of the singular significance of the roll pin located at the base of the telescoping tube. Whether or not the Technical Order was negligently drawn, as charged, is not a matter to be considered at this point. For the purposes of the Government's motion to dismiss, I assume that the jury properly found that the Government was negligent as charged. The question here is whether the negligence was that of Casanova or whether it was that of Perkins. So far as I can ascertain by reading the record, the charges of negligence would go solely to the activities of Mr. Casanova.

Accordingly, I believe that the Government's motion to dismiss should be granted with regard to the charges of negligence relating to design of the aircraft and ejection seat and that it should be denied as regards the charges of negligence going to the preparation of Technical Order No. 876.