Charles S. **WITTKAMP** and Nancy
Wittkamp, Plaintiffs,

v.

The **UNITED STATES** of America et al.,
Defendants.

**GENERAL SPORTING GOODS CORPO-
RATION**, a corporation, Third-Party
Plaintiff,

v.

**NORMA PROJEKTILFABRIK**, a foreign
corporation, Third-Party Defendant.

Civ. A. No. 30979.

United States District Court,
E. D. Michigan, S. D.

June 13, 1972.

James Finn, Detroit, Mich., for plaintiffs.

Robert Rosenberg, Asst. U. S. Atty., Detroit, Mich., Peter W. Bowie, Trial Atty., Dept. of Justice, Washington, D. C., for the United States.

Wolfgange Hoppe, Miller, Canfield, Paddock & Stone, Detroit, Mich., for Norma Precision.

William Smith, Lacey & Jones, Detroit, Mich., for General Sporting Goods and Norma Projektilfabrik.

FREDERICK W. KAESS, Chief Judge.

Plaintiffs, Charles and Nancy Wittkamp, filed suit against the United States and other defendants, claiming injuries suffered when a rechambered 30.06 Springfield Rifle exploded in Mr. Wittkamp's face on November 11, 1966.

The following allegations against the United States were made by plaintiffs in their second amended complaint:

1. The rifle was defective per se, because of brittle metal;

2. The Government discovered the weapon was a hazard to the armed forces and disposed of it;

3. The Government failed to warn the general public of a known defective rifle;

4. The Government breached both its express and implied warranties that the rifle was fit for ordinary purposes;

5. The rifle reached Mr. Wittkamp, the purchaser, without substantial change.

6. The Government was negligent in:

(a) Controlling and supervising the design, manufacture and assemblage of the weapon;

(b) Failing to use due care to inspect and test the subject rifle;

(c) Disposing of the rifle with knowledge of defect;

(d) Failing to adequately warn the public;

(e) Failing to anticipate the purposes for which the weapon would be used.

## FINDINGS OF FACT

In 1964, Charles S. Wittkamp purchased a used model 1903 bolt action Springfield Rifle, Caliber 30.06, Serial No. 200436, from Arlan's Department Store, in Bay City, Michigan.

This rifle was manufactured at some time prior to 1917 by the United States of America at the Rock Island Arsenal. There are no actual records or data available regarding the rifle's manufacture, usage, or prior history.

After purchasing the rifle, Mr. Wittkamp shortened the barrel and put on a new stock. He also cut off the old bolt handle and welded on a new handle. Mr. Wittkamp had a telescopic sight put on the rifle. As part of the process of installing the sight, a portion of the rifle's receiver was annealed so that holes could be drilled in it. This annealing, or heat treating, of the receiver resulted in adverse metallurgical changes in its atomic structure known as "microcracks". These "microcracks" occurred at the interface between the annealed area and the remainder of the receiver, and rendered it unsafe by their presence.

Finally, plaintiff took the rifle to a gunsmith and had it rechambered from a 30.06 caliber to a .308 Magnum. This rechambering process involves enlarging

a portion of the barrel to accommodate the larger .308 Magnum cartridge. It also involves enlarging the bolt face to accommodate the larger diameter head of the .308 Magnum cartridge. As a result of all of these modifications, the rifle bore no resemblance to the rifle which plaintiff originally purchased.

After the completion of these modifications, plaintiff fired approximately 50 rounds of .308 Magnum ammunition. On November 11, 1966, this rechambered rifle exploded when Mr. Wittkamp fired it while hunting.

The part of the rifle which exploded was the receiver. The receiver is that part of the rifle which houses the cartridge and through which the bolt locks the cartridge in place for firing. The receiver of this rifle was made from a very hard, high carbon steel.

The first 285,507, Model 1903 rifles which were manufactured at the Rock Island Arsenal had receivers made from this very hard steel. These rifles, with serial numbers below 285,507, have become known as the so-called "low numbered" Springfield rifles.

The receivers of these rifles were made using the best technology which was available at the time. The evidence showed that these rifles were properly manufactured and proof tested before they were issued. There was no evidence that the rifle was not capable of firing cartridges for which it was designed, i. e., 30.06. However, because a very hard steel was used for the receivers, they were not suitable for rechambering. This fact had been widely publicized in many books and articles. This fact was also known to the plaintiff since he was warned by one Robert Maynard not to fire a rechambered, low number Springfield rifle.

There was expert testimony that, from the condition of the rifle's barrel, it appeared that the weapon had been fired a great number of times prior to its purchase by the plaintiff. Also, there is no proof concerning the alleged negligent introduction of the weapon into the nation's commerce. This Court notes the fact that Department of War regulations permitted disposal of the weapon all through the 1920's. Moreover, these rifles were given or sold to friendly foreign governments at various times prior to World War II. Model 1903 Springfield rifles were also obtained by bona fide gun clubs and their members, and often soldiers mustered out of the army retained the rifle. In no instance, has there been proof of negligent disposal to the general public.

Plaintiff introduced evidence concerning the convening of an Army Board, in 1927, to study and report on the rifle. This Board made recommendations against further use of Spingfield Armory rifles, as opposed to those of Rock Island Arsenal manufacture. But, notwithstanding this subtlety, there is no evidence the subject weapon was disposed of subsequent to the report. Within the various limitations noted by the Board, the rifle was safe and usable.

In summary, the Court finds that the catastrophic failure of the rifle was caused by an excessive load on the bolt, which the receiver, due to its unsafe condition, could not sustain. The load, that is, the force, which a .308 cartridge exerts on the bolt face after firing, was increased approximately 10% due to the increase in area of the bolt face during rechambering. The locking lugs of the bolt did not fit properly with the locking recesses of the receiver, thereby causing the force to be further concentrated. At the time of the trial, the lower locking lug was not attached to the bolt. There was no evidence that it was attached to the bolt at the time of the explosion. An absence of the lower locking lug during firing would result in added stress being placed on an already weakened receiver. Thus, upon firing, a severe stress was placed on the top of the receiver. This stress, or force, took the path of least resistance, starting at the top of the receiver and proceeding through the perimeter of the annealed area which contained the "microcracks".

The evidence also shows that the plaintiff fired the rifle while in an unorthodox and very dangerous position. Plaintiff fired the weapon without bracing it against his shoulder. When he fired, he was leaning against a tree in an off-balance position. Plaintiff shot right-handed, but placed his left hand in back of his right to support the weapon. He fired the rifle while looking through the telescopic sight with his head bent over the rifle and his face exposed to the maximum force of recoil. There was testimony that this nine-pound rifle was moving at a velocity of 15 feet per second when it struck plaintiff's face. With this mass and velocity, the rifle would have struck with the same momentum as a one-pound weight which had been dropped from a height of 32 feet. Therefore, from the evidence, it cannot be determined whether plaintiff was struck by a part of the exploding receiver, the telescope on recoil, or a part of the bolt handle which came off during the explosion.

## CONCLUSIONS OF LAW

■ The theory of express warranty does not apply in this case. An express warranty is any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain. Uniform Commercial Code 2–313(1) (a). There is absolutely no evidence that any form of express warranty was made in this case. There was no affirmative statement by the Government to the plaintiff which could have formed the basis of any bargain. Therefore, plaintiff has no claim based on express warranty.

■ One is liable for breach of an implied warranty if he sells any product in a defective condition which is unreasonably dangerous to the user or consumer, if the seller is engaged in the business of selling such a product, and it is expected to and does reach the user or consumer without substantial change in the condition in which it was sold. Restatement of Torts 2d, Chapter 14, § 402A; Piercefield v. Remington Arms Co., 375 Mich. 85, 133 N.W.2d 129 (1965).

Implied warranty is sometimes referred to as strict liability. The justification for the imposition of strict liability has been said to be that the seller, by marketing his product for use and consumption, has undertaken and assumed a special duty toward the consuming public. The public has the right to, and does, expect that the seller of products which are essential to its day-to-day existence will stand behind them. It is said that public policy demands that the burden of accidental injuries caused by such products be placed upon those who market them and be treated as a cost of production against which liability insurance can be obtained.

■ In appropriate circumstances, the Government may be held liable for breach of implied warranty. Pharis v. United States, 16 Ct.Cl. 501. However, the present case does not come within the purview of the implied warranty rule.

The federal government was not in the business of manufacturing or selling Model 1903 Springfield rifles for a profit. The rifles were manufactured solely for the use of the military. The plaintiff introduced no evidence of how the Government had disposed of the rifle in this case. Even if the rifle were, in fact, sold as surplus, it was not done to make a profit. It was done solely to save the taxpayers the expense of further storage or disposal by other means. Under such circumstances, the burden for accidental injuries should not be placed on the Government.

■ Further, under the implied warranty theory, it is necessary for the product to reach the user without substantial change. Restatement of Torts 2d, § 402A. In this case, plaintiff has failed to establish that the rifle reached the ultimate user in substantially the same condition in which it was disposed of by the Government. Therefore,

plaintiff has not established his claim of breach of implied warranty.

■ The remainder of plaintiff's case is based on the Federal Tort Claims Act (28 U.S.C. § 2671 et seq.). Under that Act, a plaintiff must prove the injury was caused by "a negligent or wrongful act or omission" of a Government employee. Dalehite v. United States, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1954); Simpson v. United States, 454 F.2d 691 (6th Cir. 1972).

■ The facts as presented in the trial failed to establish an act of negligence of a Government employee in the scope of employment. See Jayson, Handling Federal Tort Claims, § 214. There has been no showing of the rifle being negligently designed, manufactured or tested.

Thus, the claims based on these allegations have not been proven and are dismissed. Parenthetically, the Court notes that the rifle's design, manufacture, and quality control were discretionary decisions of the Secretary of War and the Chief of Ordnance. Consequently, 28 U.S.C. § 2680(a) would seem to exclude these claims. See *Dalehite, supra;* Moyer v. United States, 302 F. Supp. 1235 (S.D.Fla.1969); Coates v. United States, 181 F.2d 816 (8th Cir. 1950).

The claim of negligent disposal of the subject weapon is not substantiated by the proofs. There is no evidence the rifle entered the stream of commerce pursuant to a negligent act of a Government employee while in the scope of employment. *Simpson, supra.* On the contrary, there exists a variety of legitimate means by which the rifle left the control of the Army. And, in the latter situation, the disposal of the rifle was a decision made by the Secretary of War and an act exempt from suit. 28 U.S.C. § 2680(a).

■ The plaintiff has also alleged the Government did not give adequate notice of the weapon's frailties. This contention is moot since plaintiff personally was given a warning. It cannot be said the Government's failure to give notice, even if true, was a proximate cause of the injury.

In the present action, the Government had no control over the instrumentality for more than fifty years prior to the accident. The failure happened in the absence of negligence of the Government. The accident happened because the weapon was mishandled, because it was altered, and thus substantially changed, because the ammunition was too powerful, and because of the condition of the weapon's parts, e. g., the bolt and the locking recesses.

Furthermore, there is no reason to believe a failure would have occurred were the weapon not converted. As is apparent, rifles fail and explode for a multitude of reasons apart from manufacturing defects.

■ Mr. Wittkamp, by his own acts, was guilty of contributory negligence. He was responsible for changing the characteristics of the weapon. He sporterized the weapon. He had a sight annealed to the receiver, and as the Court is well aware, annealing tends to change the condition of metal. And he fired the weapon in an unorthodox position and a dangerous position. Furthermore, plaintiff knew that firing a rechambered "low numbered" Springfield rifle was dangerous.

The mere fact of injury resulting from the use of a product (in this case, arguably misuse) will not suffice to establish defectiveness.

In summary, plaintiff has failed to prove his claim of negligence by a preponderance of the evidence. Specifically, he has failed to prove that it is more likely than not that the rifle exploded because of any negligent design or manufacture by the Government. A weapon which is 50 years old, and which had been fired many times, is just as likely to explode because of "old age" or being "worn out". In fact, it is more likely that the receiver exploded because it was structurally weakened by the heat treating which was performed on it.

Even if it could be said that the rifle was negligently designed and manufactured, plaintiff has failed to prove that there was any negligence in the disposal of the rifle.

Furthermore, plaintiff has failed to prove the cause of his injury. In fact, the Court is convinced that most, if not all of plaintiff's injuries were caused by the recoil of the weapon rather than by the explosion.

Finally, the plaintiff was guilty of contributory negligence. He knew, or should have known, that a "low numbered", Model 1903 Springfield rifle should not have been rechambered. He was warned not to fire a "low numbered" rifle which had been rechambered. When he did fire the weapon, he was not acting as a reasonably prudent man would in like and similar circumstances.

Therefore, based on all of the above findings of facts and conclusions of law, it is the order of the Court that plaintiffs, Charles S. Wittkamp and Nancy Wittkamp, not recover, and that a judgment of no cause of action be, and hereby is, entered for the defendant, The United States of America.