Julia FORD and Joe Ford, Plaintiff,

v.

AMERICAN MOTORS CORPORATION,
American Motors Sales Corporation,
Jeep Corporation, AM General Corporation and the United States of America, Defendants.

Civ. A. No. H–81–1922.

United States District Court,
S.D. Texas,
Houston Division.

Jan. 24, 1984.

Carl Crow, Crawford, Grissom, Crow & Richards, Houston, Tex., for plaintiff.

William H. Payne, Fulbright & Jaworski, Houston, Tex., for American Motors Corp., American Motors Sales Corp., Jeep Corp. and AM General Corp.

Asst. U.S. Atty. Letitia Taitte, Houston, Tex., for U.S.

## ORDER

CARL O. BUE, Jr., District Judge.

Came on to be heard on the 28th day of October, 1983, the Motion of Defendant United States for Dismissal from this cause, and it appearing to the Court that it lacks subject matter jurisdiction over the United States in this cause, the Motion is hereby granted.

This action was filed against Defendants American Motors Corporation, Jeep Corporation, and American Motor Sales Corporation on July 30, 1981. Suit was filed against the AM General Corporation on March 22, 1982 and against the United States on July 8, 1982, for injuries sustained as a result of a vehicular accident.

This Court entered a Docket Control Order on October 6, 1982 setting May 2, 1983 as the last day for completion of Discovery and trial for May/June, 1983. A Continuance was granted and a new Docket Control Order set October 10, 1983 as the date for completion of Discovery.

After consideration by the court of the pleadings and memoranda of law, the record herein and of the oral argument of counsel for all parties, the court is of the opinion that the acts of the United States of which Plaintiffs complain were of a discretionary nature, involving judgments at a policy-making level. As such, they cannot form the basis for suit under the Federal Tort Claims Act, 28 U.S.C. 2675, 28 U.S.C. 2680(a).

Plaintiffs allege that, in 1979, they purchased a surplus Postal delivery vehicle at a public sale. In 1980, Plaintiff Julia Ford, while driving this vehicle, sustained injury when it tipped on its side. Plaintiffs contend that the vehicle was designed without sufficient resistance to "rollover". The only act of the United States of which Plaintiffs complain in their Fourth Amended Complaint is the failure to warn purchasers of surplus Postal vehicles of various design characteristics which were alleged by Plaintiffs to result in a low resistance to rollover during normal and anticipated operation. Plaintiffs do not allege a specific manufacturing defect peculiar to a single vehicle.

The particular vehicle owned by Plaintiffs is a type known as a DJ–5b "quarter ton vehicle" (capacity of a quarter ton). The vehicle is a light truck by Department of Transportation classification and so states in a decal on its dashboard. The DJ–5b had been produced during 1971–2, introduced by the United States Postal Service (USPS) into use in 1972, and used until a set number of years or miles travelled were reached. These vehicles were then sold as surplus to USPS needs in accordance with the policy and practice of the USPS.

The decision to sell postal vehicles to the general public after a specified useful life for postal delivery purposes, was a discretionary function duly exercised by the United States Postal Service. Congress has granted the Postal Service the power:

(5) to acquire, in any lawful manner, such personal or real property, or any interest therein, as it deems necessary or convenient in the transaction of its business; to hold, maintain, sell lease, or otherwise dispose of such property or any interest therein; and to provide services in connection therewith and charges therefor. 39 U.S.C. 401.

The decisions as to whether and what vehicles to acquire, and to routinely sell as surplus, are made within the United States Postal Service by the Director of the Office of Fleet Management. The Office of Fleet Management, from 1971 forward, considered the possibility that some of the DJ–5 series of postal vehicles might be susceptible to a higher incidence of rollover than passenger cars and trucks. The Office of Fleet Management evaluated various studies and requested and evaluated others, and concluded that the vehicle performed satisfactorily as a light truck. The Postal Service, in considering and evaluating questions regarding performance of these vehicles, decided the vehicles were not defective. Moreover, the Postal Service has continued to order vehicles which are substantially similar in design. Evaluation of the reports on the vehicles performance, and determination that they performed satisfactorily as light delivery trucks, without modification or any particular "warning" to the drivers, was made at the level of the Director of the Office of Fleet Management.

> Any claim based upon an action or omission of the Government exercising due care, in the execution of a statute or regulation, whether or not such regulation be valid, or *based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or employee of the Government, whether or not the discretion involved be abused.*

28 U.S.C. § 2680(a) (emphasis supplied). Accordingly, to the extent that Plaintiffs seek to predicate liability based upon any act or omission which constitutes a discre-tionary function, this attempt must fail because such a claim is barred by this provision.

In the landmark decision in this area, *Dalehite v. United States,* 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953), the Supreme Court discussed at length the meaning of the "discretionary function" exemption of the Federal Tort Claims Act. The plaintiff in that case sought recovery for an alleged wrongful death resulting from a catastrophic explosion of ammonium nitrate fertilizer aboard two steamships. The explosion levelled the ships and much of Texas City, Texas. *Dalehite,* the test case on liability, was one of some 300 separate personal and property damage claims which aggregated two hundred million dollars. The district court found causal negligence on part of the United States in: (1) the adoption of the fertilizer export plan; (2) the manufacturing process; and (3) the dereliction of official duty in failing to police the shipboard loading. Reversal of this decision by the Fifth Circuit was upheld by the Supreme Court which had granted certiorari "because the case presented an important problem of federal statutory interpretation." 346 U.S. at 17, 73 S.Ct. at 958. The Supreme Court held as a matter of law that the claim was based upon a discretionary function or duty within the intendment of 28 U.S.C. § 2680(a), and did not establish a cause of action cognizable under the Federal Tort Claims Act.

*Dalehite* noted that the legislative history of the Federal Tort Claims Act revealed that § 2680(a) was included to assure protection for the United States against tort liability for errors in administration or in the exercise of discretionary functions. It was not intended that the propriety of a discretionary administrative act should be tested in a tort lawsuit. The Court further recognized that the right to sue the United States in tort was obtained from Congress, and plaintiffs necessarily assert it subject to the restrictions imposed. Since the authorization to sue contained this provision protecting the United States from all "claims, however negligently caused, that

affected the Governmental functions," the courts were bound to apply it, *Id.* at 32, 73 S.Ct. at 966.

In interpreting the statutory language[1], the Court held that the discretionary function provision excepts acts of discretion by all employees exercising discretion and precludes any action based on abuse of discretionary authority whether or not negligence is alleged to have been involved. *Id.* at 33–34, 73 S.Ct. at 966–67. With respect to the scope of the exception, *Dalehite* advised that the discretion protected is "the discretion of the executive or the administrator to act according to one's judgment of the best course, a concept of substantial historical ancestry in American law." *Id.* at 34, 73 S.Ct. at 967. The Court stated:

It is unnecessary to define, apart from this case, precisely where discretion ends. It is enough to hold, as we do, that the "discretionary function or duty" that cannot form a basis for suit under the Torts Claims Act includes more than the initiation of programs and activities. It also includes determinations made by executives or administrators in establishing plans, specifications or schedules of operations. Where there is room for policy judgment and decision there is discretion. It necessarily follows that acts of subordinates in carrying out operations of government in accordance with official directions cannot be actionable. If it were not so, the protection of § 2680(a) would fail at the time it would be needed, that is, when a subordinate performs or fails to perform a causal step, each action or nonaction being directed by the superior, exercising, perhaps abusing, discretion. Id. at 35–36, 73 S.Ct. at 968.

The evaluation of hazards and the determination to proceed in a particular manner based on that judgment has been recognized as a protected discretionary act. In *George v. United States*, 703 F.2d 90 (4th Cir.1983), the plaintiff asserted that the Federal Aviation Administration should have barred the use of two dissimilar met-

als in a particular aircraft component. A failure of an airplane component with commingled dissimilar metals was alleged to be the proximate cause of injury. The Court found that FAA had at one time questioned the use of dissimilar, coterminous metals in fuel systems, and had decided not to ban their use. This "is clearly the type of determination for which the government is protected from liability under the discretionary function exception." *Id.* at 92. The same approach was followed in *Miller v. United States*, 710 F.2d 656 (10th Cir. 1983, cert. den. Oct. 31, 1983) where the challenged decisions went to the essence of executive judgment in fashioning a highway in the public interest out of a welter of policy consideration.

*Stewart v. United States*, 486 F.Supp. 178 (C.D.Ill.1980) is also analogous to the case at bar. This Federal Tort Claims Act action attempted to predicate liability on the basis of the Government's decision to sell asbestos from its national stockpiles in unmarked crates to industrial buyers. After dismissing the count based on strict liability, the court concluded that the remaining claim against the United States had to be dismissed as well under the discretionary function exception. The decision to sell the asbestos in unmarked crates necessitated the weighing of economic and other policy considerations at the highest levels. Accordingly, the judgment was protected and no claim based thereon was cognizable under the Federal Tort Claims Act.

The plaintiff in *Wittkamp v. United States*, 343 F.Supp. 1075 (E.D.Mich.1972), purchased an army surplus rifle. The rifle exploded while getting fired on a hunting trip. The Court found there was no express or implied warranty under the circumstances and no negligence on the part of the United States. It further "note[d] that the rifles' design, manufacture and quality control were discretionary decisions of the Secretary of the War and the Chief of Ordnance" which would be excluded by 28 U.S.C. § 2680(a). With respect to the

---

1. The continuing vitality of *Dalehite* has been acknowledged by the Supreme Court most re-

cently in *Laird v. Nelms*, 406 U.S. 797, 92 S.Ct. 1899, 32 L.Ed.2d 499 (1972).

decision to permit the rifle to enter the stream of commerce, the court recognized that there were a number of legitimate means of disposal available to the Army. The decision of the Secretary of War as to the disposition of the rifle was exempt from suit because it likewise was a discretionary function.

Based upon the foregoing authorities and reasons, the Court concludes that this action must be dismissed as to the United States because the conduct complained of was action taken in the exercise or performance of a discretionary function. The Postal Service evaluated the performance of the vehicles, made the judgment that they performed satisfactorily as light delivery trucks without modification, and concluded that no particular "warning" was required. This exercise of discretionary authority and judgment cannot be challenged through the medium of a tort suit.

Accordingly, this cause is dismissed as to Defendant United States of America.